UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : Civil Action No.: 1-12-cv-00033 |
| v. | : |
| LIFE PARTNERS HOLDINGS, INC., BRIAN PARDO, R. SCOTT PEDEN, AND DAVID M. MARTIN, | : |
| Defendants. | : |

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

**LOCKE LORD LLP**
Jason S. Lewis
State Bar No. 24007551
Email: jlewis@lockelord.com
David W. Klaudt
State Bar No. 00796073
Email: dklaudt@lockelord.com
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Tel: (214) 740-8000
Fax: (214) 756-8414

**ATTORNEY FOR DEFENDANT BRIAN D. PARDO**

**PATTON BOGGS LLP**
S. Cass Weiland
State Bar No. 21081300
Robert A. Hawkins
State Bar No. 00796726
2000 McKinney Ave, Suite 1700
Dallas, Texas 75201
Ph: (214)578-1500
Fax: (214) 578-1550
Email: gweiland@pattonbogygs.com
Email: rhawkins@pattonboggs.com

**ATTORNEY FOR DAVID M. MARTIN**

**BAKER & McKENZIE LLP**
Elizabeth L. Yingling
State Bar No. 16935975
E-Mail: elizabeth.yingling@bakermckenzie.com
Laura J. O'Rourke
State Bar No. 24037219
E-Mail: laura.orourke@bakermckenzie.com
Will R. Daugherty
State Bar No. 24053170
E-Mail: will.daugherty@bakermckenzie.com
2300 Trammell Crow Center, 2001 Ross Avenue
Dallas, TX 75201
Tel.: (214) 978-3000
Fax: (214) 978-3099

**LAW OFFICES OF J PETE LANEY**
J Pete Laney
State Bar No. 24036942
E-Mail: jpete@jpetelaney.com
1122 Colorado Street, Suite 111
Austin, TX 78701-2159
Tel: (512) 473-0404
Fax: (512) 672-6123

**ATTORNEYS FOR DEFENDANTS, LIFE PARTNERS HOLDINGS, INC. AND R. SCOTT PEDEN**

## **TABLE OF CONTENTS**

I.   BACKGROUND ........................................................................................................... 1

II.   ARGUMENT AND AUTHORITIES ......................................................................... 4

III.  PRAYER ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Gillard v. Boulder Valley Sch. Dist. RE-2,*
   196 F.R.D. 382 (D. Colo. 2000) ................................................................................. 4, 5

*Green v. Nicholson Mfg.,*
   No. 9:04-CV-227, 2005 U.S. Dist. LEXIS 45905 (E.D. Tex. Sept. 22, 2005) .......................... 4

*Harris v. Amoco Prod. Co.,*
   768 F.2d 669 (5th Cir. 1985) .................................................................................... 10

*MSC Software Corp. v. Altair Eng'g, Inc.,*
   No. 07-12807, 2012 U.S. Dist. LEXIS 69107 (E.D. Mich. May 17, 2012) ............................. 8

*Nw. Mem'l Hosp. v. Ashcroft,*
   362 F.3d 923 (7th Cir. 2004) ..................................................................................... 7

*Regan-Touhy v. Walgreen Co.,*
   526 F.3d 641 (10th Cir. 2008) ................................................................................... 6

*SEC v. Steffes,*
   No. 10-C-6266, 2011 U.S. Dist. LEXIS 56304 (N.D. Ill. May 25, 2011) ......................... 9, 10

*Seattle Times Co. v. Rhinehart,*
   467 U.S. 20 (1984) ................................................................................................. 5

*Simonelli v. Fitzgerald,*
   No. SA-07-CV-360-XR, 2007 U.S. Dist. LEXIS 49068 (W.D. Tex. July 2, 2007) .................. 4

*U.S. v. Bulger,*
   2012 U.S. Dist. LEXIS 98770 ................................................................................ 4, 8

*U.S. v. Carriles,*
   654 F. Supp. 2d 557 (W.D. Tex. 2009) ......................................................................... 5

**STATUTES, RULES, AND REGULATIONS**

5 U.S.C. § 552 ............................................................................................................. 4

17 C.F.R. § 200.83 ........................................................................................................ 4

45 C.F.R. § 164.512(e) ............................................................................................... 6, 7

28 Tex. Admin. Code § 3.1714 ....................................................................................... 6

Fed. R. Civ. P. 5.2 ......................................................................................................... 6, 7

Fed. R. Civ. P. 26(c) ...................................................................................................... 4, 7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> LIFE PARTNERS HOLDINGS, INC., BRIAN : <br> PARDO, R. SCOTT PEDEN, AND : <br> DAVID M. MARTIN : <br> : <br> Defendants. : | Civil Action No.: 1-12-cv-00033 |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT**

Defendants, Life Partners Holdings, Inc. ("LPHI"), R. Scott Peden ("Peden"), Brian Pardo ("Pardo"), and David M. Martin ("Martin") (collectively "Defendants"), file this Motion for Protective Order, pursuant to Rule 26 of the Federal Rules of Civil Procedure, and respectfully show the Court as follows:

### I. BACKGROUND

LPHI is a publicly-traded company and the parent company of Life Partners, Inc. ("LPI") since 2000. LPI, a non-party to this case, is a private company, incorporated in 1991, that is engaged in the secondary market for life insurance known generally as "life settlements."[1] A life settlement involves the sale of a life insurance policy to another party.[2] In general terms, the life settlement process begins when an insured decides to sell his or her life insurance policy in the secondary market by contacting a broker that solicits offers from life settlement companies, such

---

[1] As used herein, the term "life settlements" refers collectively to "viatical settlements," which generally refers to policies in which the insured has a terminal illness and a life expectancy of less than two years, as well as "life settlements," which generally refers to policies in which the insured is a senior citizen and has a life expectancy of greater than two years.
[2] *See* LPHI's 2011 Form 10-K, p. 4, available at http://www.sec.gov/Archives/edgar/data/49534/000114420411066513/v241450_10k.htm.

---

as LPI. On behalf of the insured, the broker will generally submit to LPI a completed "Application Agreement" providing background information about the insured and the insurance policy. After conducting a preliminary review of the insured's application, the insured provides, or authorizes the provision of, his or her medical records to LPI. In turn, LPI provides the medical records to a licensed physician and board certified oncologist, Dr. Donald Cassidy, and, beginning in March 2011, to a life expectancy provider, 21st Services, to evaluate the insured's medical records and provide an estimated life expectancy of the insured. If LPI makes an offer to the insured to purchase the policy as agent for third-party purchasers, and the insured accepts, LPI and the insured enter into several agreements to effectuate the acquisition. The agreements, insured's medical records, and other insured-related documents (collectively, the "Insured File") are maintained by LPI in a physical folder and, for documents from the years 2000 forward, are also imaged and stored on a database.[3]

Interests in the insurance policy are then generally offered to high-net-worth individuals, which LPI refers to as "retail purchasers," that come to LPI through a network of financial planners, whom LPI calls "licensees."[4] To purchase a life settlement, a prospective retail purchaser submits, among other things, an "Agency Agreement and Special Power of Attorney," which appoints LPI as a limited agent of the purchaser in connection with the purchase of a life settlement, as well as certain disclosure documents discussing the nature and risks of making a life settlement purchase. Before reserving an interest in a policy, purchasers and/or their financial planner are provided with a "Policy Funding Agreement," which, *inter alia*, identifies the policy to be purchased and the acquisition price. For each life settlement, purchasers and/or their financial planners are also provided with a "Policy Illustration," which sets forth the

---

[3] Affidavit of R. Scott Peden ("Peden Aff."), ¶3, included in the Appendix hereto as Exhibit A.
[4] LPI also facilitates purchases of life settlements for "institutional purchasers," and the documents produced to Plaintiff in connection with its nonpublic investigation also included documents concerning institutional purchasers.

estimated premium payments on the policies, as well as a "Confidential Case History," which provides summary medical information for, and the estimated life expectancy of, the insured. The Agency Agreement, Policy Funding Agreement, Policy Illustration, Confidential Case History, and various correspondence with each purchaser are maintained together in what LPI refers to as the "Purchaser File." LPI maintains a physical Purchaser File for each retail purchaser and, for documents from the years 2000 forward, LPI also maintains an electronic version on its database.[5]

In September 2010, Plaintiff first began obtaining documents from Defendants in connection with Plaintiff's nonpublic investigation of LPI and LPHI (collectively, the "Companies").[6] Over the course of Plaintiff's more than fifteen (15) month investigation, the Companies produced millions of pages of documents and electronically stored information ("ESI").[7] These documents and ESI include the medical and financial records of thousands of third-parties, as well as highly sensitive business and financial information of the Companies.[8] The Companies produced these documents with the legitimate understanding that the documents would be kept confidential. Indeed, Plaintiff expressly assured the Companies that "[t]his matter is confidential."[9] Moreover, according to Plaintiff's own Enforcement Manual, which sets forth the policies and procedures of the Division of Enforcement, "[a]ll information obtained . . . by SEC staff during investigations or examinations should be presumed confidential and nonpublic unless disclosure has been specifically authorized."[10] Furthermore, when producing all such documents and ESI, the Companies specifically requested confidential treatment of such

---

[5] Peden Aff., ¶4.
[6] *See* Sept. 9, 2010 letter from Akita N. Adkins, Plaintiff's counsel, to Ida Draim, the Companies' former counsel, a true and correct copy of which is attached as Exhibit 1 to the Affidavit of Elizabeth Yingling ("Yingling Aff."), included in the Appendix hereto as Exhibit B.
[7] Peden Aff., ¶¶5-6.
[8] *See* Peden Aff., ¶¶5-6.
[9] Yingling Aff., Ex. 1.
[10] *See* SEC Enforcement Manual, § 5.1 (March 9, 2012), included in the Appendix hereto as Exhibit C.

documents and ESI under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), on the grounds that, *inter alia*, "they contain nonpublic, personal and proprietary information of the Life Partners entities and individual investors, the discovery of which could irreparably harm the entities and/or those investors."[11] Now that litigation has commenced, a protective order limiting the public disclosure of the documents and ESI is appropriate to protect the privacy and economic interests of third-parties and Defendants.

## II. ARGUMENT AND AUTHORITIES

The Court has broad discretion to issue a protective order on a showing of good cause.[12] Pursuant to Federal Rule of Civil Procedure 26(c)(1), the Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Blanket protective orders, such as the form protective order attached as Appendix H to the Local Rules, "routinely are approved by courts in civil cases" and are particularly appropriate in cases, such as the instant action, involving large-scale discovery.[13] "Blanket protective orders serve the interests of a just, speedy, and less expensive determination of complex disputes by alleviating the need for and delay occasioned by extensive and repeated

---

[11] *See* Yingling Aff., ¶4. Although nonpublic SEC investigations are still subject to FOIA, Rule 83 of the Commission's Rules on Information and Requests, 17 C.F.R. § 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under FOIA.

[12] *See* Fed. R. Civ. P. 26(c); LR-CV 26(c) ("Upon motion by any party demonstrating good cause, the court may enter a protective order in the form set out in Appendix H or any other appropriate form. In cases where the parties agree to a protective order, the form set out in Appendix H is approved."); *Green v. Nicholson Mfg.*, No. 9:04-CV-227, 2005 U.S. Dist. LEXIS 45905, at *4 (E.D. Tex. Sept. 22, 2005) ("Courts have wide discretion in determining whether a protective order is appropriate, and how disclosure of sensitive information should be restricted.").

[13] *See Gillard v. Boulder Valley Sch. Dist. RE-2*, 196 F.R.D. 382, 386 (D. Colo. 2000) (discussing differences between particular protective orders, umbrella protective orders, and blanket protective orders); *U.S. v. Bulger*, No. 99-10371-RGS, 2012 U.S. Dist. LEXIS 98770, at *18 (D. Mass. July 17, 2012) ("Blanket orders expedite the flow of discovery and avoid the time consuming, inefficient process of a document by document review. [....] They are particularly useful in cases involving large-scale discovery.") (internal citation and quotations omitted); *Simonelli v. Fitgerald*, No. SA-07-CV-360-XR, 2007 U.S. Dist. LEXIS 49068, *13-25 (W.D. Tex. July 2, 2007) (rejecting arguments that the standard protective order set forth in Appendix H to the Western District's Local Rules is "over broad and cumbersome" and granting motion for protective order).

judicial intervention."[14] The party seeking the entry of a blanket protective order "must make some threshold showing of good cause to believe that discovery will involve confidential or protected information. This may be done on a generalized as opposed to a document-by-document basis."[15]

Protective orders have long been used by courts to prevent disclosure of personal, medical and financial information.[16] Indeed, the form protective order included as Appendix H to the District's local rules, on which Defendants' proposed protective order is based, provides protection of, among other things, "trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analysis, personnel files, personal information that is protected by the law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties." Here, the documents and ESI exchanged during discovery include extremely private information of third-parties that require protection from disclosure, including, but not limited to:

(a) Medical records of more than 1,800 third-parties (many of which disclose that the person has AIDS, as well as other sensitive medical histories and conditions);

(b) Purchaser files containing personally-identifying and financial information of more than 14,000 third-parties that are (or were) LPI's clients (which typically include copies of driver's licenses, personal checking account numbers, social security numbers, and personal investment histories);

(c) Licensee files containing the personally-identifying and financial information of hundreds of licensees (which typically include copies of drivers licenses, bank account numbers for direct deposit, and personal tax information);

---

[14] *Gillard*, 196 F.R.D. at 386.
[15] *Id.* (quoting *Parkway Furniture, Inc. v. Kittinger/Pa. House Group, Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988)).
[16] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-36 (1984); *U.S. v. Carriles*, 654 F. Supp. 2d 557, 568 (W.D. Tex. 2009) ("The use of protective orders to prevent disclosure of private medical information is also clearly established.") (citing, *inter alia*, *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) ("Courts could not function effectively in cases involving sensitive information – trade secrets, medical files and minors, among many others – if they lacked the power to limit the use parties could make of sensitive information….")).

(d) Personnel files of current and former employees of the Companies (which typically include information concerning compensation and benefits, copies of driver's licenses and social security cards, health insurance information, unemployment claims, and performance reviews).[17]

The privacy interests of third-parties in their medical records,[18] personally identifying information,[19] financial information, and personnel files[20] are well-established and require protection from public disclosure. Although Plaintiff recognizes the need to keep this information confidential, Plaintiff opposes the entry of a protective order in this case.[21] It is Plaintiff's position that Federal Rule of Civil Procedure 5.2 adequately addresses the confidentiality of such information. However, Rule 5.2, in pertinent part, only requires redaction of social-security numbers, tax identification numbers, birth dates, and financial-account numbers. Most importantly, Rule 5.2 does not apply outside of filings made with the Court.[22] As such, Plaintiff, as well as any other party or non-party that obtains such documents or ESI, are free to disclose such documents, in unredacted form, outside of this case to any person, and the

---

[17] Peden Aff., ¶5. In the event that the Court would like to review sample Insured, Purchaser, and/or Licensee files, Defendants request leave to submit such documents for *in camera* review.

[18] Both federal and state laws protect the confidentiality of medical records of insureds. Under the Health Insurance Portability and Accountability Act ("HIPAA"), disclosure is only permitted, *inter alia,* pursuant to a court order, subpoena, or discovery request when the disclosing party "receives satisfactory assurance from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order . . . ." 45 C.F.R. § 164.512(e)(1)(ii)(B). The protective order must prohibit "using or disclosing the protected health information for any purpose other than the litigation . . ." and "require[] the return to the [physician] or destruction of the protected health information . . . at the end of the litigation or proceeding." 45 C.F.R. § 164.512(e)(1)(v). With respect to state laws, many states, including Texas, prohibit viatical and life settlement providers (such as LPI) from disclosing any confidential information, including medical and financial information, about the insured. *See, e.g.,* 28 Tex. Admin. Code § 3.1714.

[19] *See, e.g.,* Fed. R. Civ. P. 5.2(a) (requiring redaction of, *inter alia,* social-security numbers, birth dates, and financial account numbers contained in electronic and paper filings with the court).

[20] *See, e.g., Regan-Touhy v. Walgreen Co.,* 526 F.3d 641, 648 (10th Cir. 2008) (recognizing that "personnel files often contain sensitive personal information ... and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly").

[21] *See* July 27, 2012 email from Jason C. Rodgers, Plaintiff's Counsel, to (among others) Will R. Daugherty and Elizabeth Yingling, counsel for LPHI and Peden, included as Exhibit 2 to Yingling Aff.

[22] *See* Fed. R. Civ. P. 5.2(a) ("Unless the court orders otherwise, **in an electronic or paper filing with the court** that contains ....") (emphasis added). Indeed, Plaintiff's position that Rule 5.2 adequately protects the confidentiality of sensitive personal, financial, and medical information would render this District's form protective order, attached as Appendix H to the Local Rules, superfluous and unnecessary.

public at large, without limitation.[23] Therefore, the proposed protective order is necessary to protect against the public dissemination of this highly confidential and sensitive information of third-parties.[24]

Furthermore, documents and ESI containing sensitive business and financial information of the Companies, the disclosure of which could result in significant competitive and economic harm to the Companies, are precisely the types of information intended to be protected from disclosure outside of litigation under the Federal Rules of Civil Procedure. Indeed, Rule 26(c)(1)(G) specifically authorizes the Court to order "that a trade secret or other confidential research, development, or commercial information not be revealed or only in a specified way." Here, the scope of the documents and ESI concerning the Companies' business and financial information at issue is staggering, and includes, *inter alia*:

(a) Hundreds of thousands of emails from current and former employees relating to all facets of the Companies' business;

(b) Internal memoranda and communications discussing the Companies' confidential underwriting guidelines, pricing methodologies and business strategies;

(c) The Companies' computer network and communications topology;

(d) Operational data including a proprietary database containing confidential information concerning the Companies' clients, policies, insureds, and licensees;

(e) Documents containing information concerning the Companies' accounting practices and procedures, aging reports, and general ledgers.[25]

---

[23] Plaintiffs' erroneous interpretation of Rule 5.2 would also render provisions of HIPAA superfluous. HIPAA prohibits the disclosure of protected medical records in response to subpoenas or discovery requests without notice to each person's whose medical records are sought, *unless* a "qualified protective order" has been entered or sought by the party requesting the information. 45 C.F.R. §164.512(e)(1)(ii)(B). HIPAA defines a "qualified protective order" as one that "[p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and [r]equires the return to the covered entity or destruction of the protected health information (including copies made) at the end of the litigation or proceeding." 45 C.F.R. § 164.512(e)(5).

[24] Moreover, redaction of the medical records does not adequately protect the heightened privacy interests of third-parties in their medical records where, as here, the medical records contain particularly sensitive information such as whether persons have AIDS. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004) ("Even if there were no possibility that a patient's identity might be learned from a redacted medical record, there would be an invasion of privacy.").

In addition, the scale of discovery in this case is massive.[26] In connection with Plaintiff's nonpublic investigation, Defendants produced thousands of pages of physical documents and hundreds of *gigabytes* of ESI.[27] Indeed, the Insured Files, Licensee Files, and Purchasers Files **alone** comprise hundreds of **gigabytes** of ESI amounting to millions of pages of PDF documents.[28] In addition, emails of the Companies' current and former employees, without any limitation as to time or subject matter, were produced to Plaintiff and consist of more than 500,000 emails.[29] As such, page-by-page designation would be enormously time-consuming and inefficient considering the massive scope of discovery in this case. Additionally, the proposed protective order will protect from disclosure documents produced during future discovery, which will likely include, among other things, the personal financial information of Defendants Pardo, Peden, and/or Martin.[30] These documents and ESI, as well as the documents and ESI discussed *supra*, will largely comprise the discovery between the parties in this litigation.[31] Accordingly, entry of a protective order in the form proposed by Defendants is particularly appropriate as it

---

[25] *See* Peden Aff., ¶6.
[26] *U.S. v. Bulger*, 2012 U.S. Dist. LEXIS 98770, at *18 ("Blanket orders expedite the flow of discovery and avoid the time consuming, inefficient process of a document by document review. [....] They are particularly useful in cases involving large-scale discovery.") (internal citation and quotations omitted); *MSC Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2012 U.S. Dist. LEXIS 69107, at *11 (E.D. Mich. May 17, 2012) ("[Blanket protective orders] are common in large-scale litigation involving massive document exchanges.").
[27] Yingling Aff., ¶5. Although the documents and ESI produced by the Companies during Plaintiff's investigation comprise Bates-numbers LP 000001 – 0216730, most all of the ESI was not individually Bates-numbered, but rather, produced on hard-drives or DVD-R's that contained a single Bates-number. As such, the total amount of pages and documents is exponentially greater than the Bates numbers indicate. *See* Yingling Aff., ¶6.
[28] *See* Yingling Aff., ¶5. Further complicating matters is the fact that the ESI consists of many different types of files, including Outlook PST's, Microsoft Word documents, Excel Spreadsheets, PowerPoint presentations, Concordance load files, database files, and Adobe Flash files. Yingling Aff., ¶6.
[29] *See* Yingling Aff., ¶ 5.
[30] *See* Compl., ¶¶ 138-43 (allegations of insider trading against Pardo and Peden), ¶¶ 144-45 (claims for reimbursement of "bonuses and other incentive-based and equity-based compensation" against Pardo and Martin).
[31] The need for a protective order in this case is further highlighted by the fact that LPHI's former auditor, Ernst & Young LLP, objected to producing documents responsive to LPHI's subpoena "in the absence of an appropriate protective order." *See* July 30, 2012 letter from Ernst & Young LLP to LPHI's counsel, Will Daugherty, a true and correct copy of which is included as Exhibit 3 to the Yingling Aff.

would largely avoid the need for frequent judicial intervention to determine whether documents and/or ESI should be protected from disclosure outside of this litigation.[32]

Although the Defendants' proposed protective order is similar to, and based largely upon, the form protective order included in the Local Rules, it is specifically and more narrowly tailored to the needs of this case. For example, in recognition that Plaintiff, a government agency, has certain statutory and regulatory obligations concerning documents it obtains in connection with its investigations, the proposed protective order includes a provision permitting Plaintiff to disclose Classified Information in a manner consistent with such statutory and regulatory obligations.[33] In addition, because the circumstances of this case do not necessitate the "For Counsel Only" or "Attorneys Eyes Only" designations, the proposed protective order excludes those designations, and instead, only utilizes a "Confidential" designation. Finally, because significant amounts of documents and ESI were produced to Plaintiff during its nonpublic investigation from many third-parties, which Defendants just recently received, Defendants' proposed protective order permits retroactive designation of documents and ESI within thirty (30) days after entry of the protective order.[34]

Plaintiff also opposes the entry of a protective order on the grounds that it is against Plaintiff's policy of protecting the public's interest in actions brought by Plaintiff. However, in *SEC v. Steffes*, No. 10-C-6266, 2011 U.S. Dist. LEXIS 56304, at *3-4 (N.D. Ill. May 25, 2011),

---

[32] *See* Defendants' Proposed Protective Order, included as Exhibit D to the Appendix, ¶3(b) ("A party shall designate as Classified Information only such information that the party in good faith believes in fact is confidential."), ¶11 (requiring parties to consult in good faith to resolve any challenge to another party's designation of information before seeking judicial intervention).
[33] *See* Exhibit D, ¶7.
[34] In addition to the form protective order included as Appendix H to the Local Rules, the Western District has posted on its website a second form protective order entitled "Western District of Texas Protective Order," which includes a provision similar to the one proposed by Defendants that permits retroactive designation. *See* Western District of Texas Protective Order, ¶7, available at http://www.txwd.uscourts.gov/forms/docs/district/protective_order.pdf ("Documents previously produced shall be retroactively designated by notice in writing of the designated class of each document by Bates number within thirty (30) days of the entry of this order.").

Plaintiff made this same argument, and the district court properly rejected it. In *Steffes*, the defendants proposed a protective order based on the district's standard form protective order, but Plaintiff refused to agree to the entry of a protective order because Plaintiff asserted that "the public has a legitimate interest in commission litigation."[35] Rejecting Plaintiff's argument, the *Steffes* court held that "the public does *not* have a right to pretrial discovery materials not filed with the court" because "documents obtained in pretrial discovery that have not been filed with the Court have not been 'used in a court proceeding' [] and could not possibly 'influence or underpin the judicial decision.'"[36] Furthermore, the court "stress[ed] that the protective order does not foreclose access to any materials to which the public *may* have an interest" because the proposed protective order required compliance with the local rule for filing documents under seal, and thus, required that a showing of good cause be made before any document could be filed under seal.[37] Thus, after finding that the defendants' "[s]ensitive financial information is precisely the sort of information that, if made public, would allegedly and understandably result in annoyance, embarrassment and even oppression," the court entered the protective order proposed by the defendants.[38] Likewise, the public's interest in this litigation is adequately protected by the protective order proposed by Defendants as it requires compliance with the Court's Local Civil Rule 5.2 for filing documents under seal. Accordingly, good cause exists for entry of Defendants' proposed protective order as no public interest is impaired by limiting disclosure of the confidential materials in the manner set forth therein.

---

[35] 2011 U.S. Dist. LEXIS 56304 at *3-4.
[36] *Id.* at *4 (quoting *Bond v. Utreras*, 585 F.3d 1061, 1074-75 (7th Cir. 2009)) (emphasis in original).
[37] *Id.* at *4-5 (emphasis in original).
[38] *Id.* at *6-7 (internal quotation omitted). *See also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) (holding that where good cause is shown, the presumption of public access "dissipates, and the district court can exercise its sound discretion to limit disclosure").

## III. PRAYER

For each of the reasons stated herein, Defendants respectfully request that the Motion be granted, and that the Court enter the protective order included in the Appendix as Exhibit D.

Respectfully submitted,

/s/ Elizabeth L. Yingling
Elizabeth L. Yingling
State Bar No. 16935975
E-Mail: elizabeth.yingling@bakermckenzie.com
Laura J. O'Rourke
State Bar No. 24037219
E-Mail: laura.orourke@bakermckenzie.com
Will R. Daugherty
State Bar No. 24053170
E-Mail: will.daugherty@bakermckenzie.com

**BAKER & McKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Tel.: (214) 978-3000
Fax: (214) 978-3099

J Pete Laney
State Bar No. 24036942
E-Mail: jpete@jpetelaney.com
**LAW OFFICES OF J PETE LANEY**
1122 Colorado Street, Suite 111
Austin, TX 78701-2159
Tel: (512) 473-0404
Fax: (512) 672-6123

**ATTORNEYS FOR DEFENDANTS, LIFE PARTNERS HOLDINGS, INC. AND R. SCOTT PEDEN**

**LOCKE LORD LLP**
Jason S. Lewis
State Bar No. 24007551
Email: jlewis@lockelord.com
David W. Klaudt
State Bar No. 00796073
Email: dklaudt@lockelord.com
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Tel: (214) 740-8000
Fax: (214) 756-8414

**ATTORNEY FOR DEFENDANT BRIAN D. PARDO**

**PATTON BOGGS LLP**
S. Cass Weiland
State Bar No. 21081300
Robert A. Hawkins
State Bar No. 00796726
2000 McKinney Ave, Suite 1700
Dallas, Texas 75201
Ph: (214)578-1500
Fax: (214) 578-1550
Email: gweiland@pattonbogygs.com
Email: rhawkins@pattonboggs.com

**ATTORNEY FOR DAVID M. MARTIN**

## CERTIFICATE OF CONFERENCE

On July 27, 2012, the undersigned conferred with counsel for Plaintiff concerning the substance of this Motion. Counsel for Plaintiff, Jason Rodgers, stated that Plaintiff opposes the relief requested herein.

By    /s/Elizabeth L. Yingling

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court. All others were served a copy via U.S. mail.

/s/ Elizabeth L. Yingling

713754-v2\DALDMS