IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Case No.: |
| vs. | § | 1:12-cv-00033-JRN |
| | § | |
| LIFE PARTNERS HOLDINGS, INC., BRIAN | § | |
| PARDO, R. SCOTT PEDEN, and | § | |
| DAVID M. MARTIN | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT DAVID M. MARTIN'S MOTION
## FOR SEVERANCE AND BRIEF IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Pursuant to Rule 21, Fed. R. Civ. P., Defendant David M. Martin moves to sever the Plaintiff's claims against him from those of the co-Defendants Life Partners Holdings, Inc. ("LPHI"), Brian D. Pardo, and R. Scott Peden and, in support thereof, respectfully shows the following:

### I.     SUMMARY OF MOTION

The Fifth Circuit has instructed that severance is proper under Rule 21 if the joinder of claims or parties will unduly prejudice other defendants or jeopardize principles of fundamental fairness. Defendant David M. Martin ("Martin") submits that severance is required in this matter because a joint trial with his co-Defendants will prejudice his rights and be fundamentally unfair.

The Plaintiff's allegations and claims against LPHI, Pardo, and Peden date back to events occurring nearly a decade (or longer) before Martin even joined LPHI as an employee. Moreover, the SEC has brought claims against Pardo and Peden, such as insider trading, which it

has not brought against Martin. Much of the evidence the SEC will seek to introduce at the trial will be inadmissible against Martin and would be inadmissible in a separate trial against him because it relates to allegations and conduct in which he was not involved and for which he has not been accused of any wrongdoing. Thus, the Court should sever the claims against Martin to avoid undue prejudice and the unfairness of a joint trial.

## II.   ARGUMENT AND AUTHORITIES

Fed. R. Civ. P. 21 provides that the Court "may sever any claim against a party." FED. R. CIV. P. 21. The decision to grant a severance of one defendant from the others is subject to the sound discretion of the trial court. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010). Indeed, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding the principles of fundamental fairness." *Id.* at 521.

The SEC's Complaint in this case demonstrates that a severance of the claims against Martin is appropriate and required to avoid prejudice and to ensure fairness. In many instances, the SEC's allegations against LPHI and Peden date back to as early as 1999. Its allegations against Pardo go back even further to as early as July 1989. It is undisputed that Martin did not become an employee of LPHI until February 2008, and that he had no prior affiliation with the Company or its principals. Thus, the vast majority of events giving rise to the SEC's claims precede the date on which Martin could have been involved. We illustrate the prejudice Martin would suffer in a joint trial by the following allegations in the SEC's Complaint:

### *Discovery/Knowledge of Unreliable LEs*

The SEC alleges that Life Partners has "systematically used materially underestimated LEs in order to inflate its revenues" since at least 1999. *See* Doc. 67, ¶ 5. In addition, the SEC

claims that Pardo and Peden knew about the underestimated LEs "beginning at least as early as 2003." *See id.*, ¶ 49 (alleging that Pardo and Peden were members of Life Partners' Board of Directors in February 2003, and it had become apparent to the Board at that time that the LEs used were materially short); *see also id.*, ¶¶ 8, 53-54 (alleging that by fiscal year 2006, it was obvious to Life Partners, Pardo, and Peden the extent to which Cassidy had delivered to Life Partners systematically and materially underestimated LEs to the company).

This is the crux of the SEC's claims in this case – that Defendants misled investors in life settlement transactions by using and failing to disclose unreliable LEs. Yet, all of this alleged wrongdoing, according to the SEC, had occurred long before Martin joined the company in February 2008. There is no allegation by the SEC that Martin played any role in the development or use of the estimated LEs.

### *Hiring of Dr. Cassidy*

"The methods of estimating LEs for life settlement transactions originated with Dr. Kelly and then continued under Dr. Cassidy, whom Pardo hired in 1999 after Dr. Kelly's death." In support of its claims, the SEC alleges that Pardo did no meaningful due diligence on Cassidy's qualifications as a life expectancy underwriter (*Id.*, ¶ 6), and that Cassidy had no experience in rendering LEs but merely continued using Dr. Kelly's methodology. *See id.*, ¶ 7. Again, Martin had nothing to do with the hiring of Dr. Cassidy or his methodology for estimating LEs.

### *Prior Securities Litigation*

The Complaint also refers to previous securities matters involving other Defendants (but not Martin) which the SEC will no doubt try to use to its advantage at the trial of this case. In fact, the Complaint references the ancient <u>July 1989</u> SEC case filed against Pardo and his former company alleging that they materially overstated the company's revenues and profits in public

filings. *See id.*, ¶ 23. The SEC also mentions a 2007 complaint filed by the Colorado Securities Commission against Life Partners, Pardo, and Peden for allegedly failing to disclose the "high frequency rate" at which insureds outlived the LEs for the policies in life settlement transactions. *Id.*, ¶¶ 9, 55. Martin, of course, has no connection to these cases, and the SEC's efforts to use them will unfairly prejudice him at trial.

### *Alleged Misrepresentations of Pardo and Peden to Investors*

The SEC's claims are also based upon alleged representations made by Pardo and Peden to investors which, the SEC alleges, were false and/or misleading. *See id.*, ¶ 11 ("During quarterly conference calls with shareholders and investors in 2007 and 2008, Pardo lied about Life Partners' track record as delivering 'double-digit' returns to investors."); ¶ 61 (referring to October 2007 and October 2008 conference calls and Pardo's alleged misrepresentations regarding rates of returns on life settlement investments); ¶ 12 ("[I]n October and November 2008, Peden misrepresented to an investor, as well as a member of the network of independent buyers' agents that Life Partners uses to identify investors, that Cassidy used the 2008 Valuation Basic Table ("VBT") in rendering LEs for use by Life Partners."); ¶¶ 42-44 (alleging that Peden made misrepresentations to investors concerning Cassidy's methodology for estimating LEs).

Martin did not deal with LPHI's investors and is not accused of any misconduct relating to investors. He clearly does not deserve to be grouped with those who are accused of such conduct.

### *Improper Accounting Practices*

The SEC's claims regarding LPHI's alleged improper accounting practices also date back to events occurring well before Martin arrived at the company. Specifically, the SEC alleges that in fiscal year 2003, five years before Martin's employment, Life Partners began improperly and

030482.0101\4847-7505-5380.2.

prematurely recognizing revenue by booking revenue prior to the Closing Date for life settlement transactions. *See id.*, ¶¶ 64, 74. Moreover, the SEC contends that the company continued improperly recognizing revenue in 2004 and thereafter, when Pardo and Peden allegedly misled the company's auditor by providing incomplete and misleading assumptions about the criteria the company used to recognize revenue. *See id.*, ¶¶ 64, 80-83. According to the SEC, the company's improper revenue recognition practices included back-dating Policy Funding Agreements which, the SEC admits, also began years before Martin's employment with the company. *See id.*, ¶¶ 96-105 (describing alleged back-dating and referring to December 2006 email where date changes are discussed).

### *Insider Trading*

Finally, and perhaps most significantly, the SEC has brought claims against Pardo and Peden (but not Martin) for alleged insider trading. *See id.*, ¶¶ 14, 154-56 ("Between February 2007 and January 2009, Pardo and Peden sold approximately $11.5 M and $300,000, respectively, of Life Partners common stock based on material, non-public information that the Company's stock price was dependent on its practice of systematically using materially short LEs to generate revenues."). It is undisputed in this case that Martin never traded any LPHI stock.

### *Effect of Improper Joinder*

Much of the evidence the SEC will seek to have admitted at trial relating to its claims and the issues discussed above will be inadmissible against Martin. Further, the evidence would be inadmissible in a separate trial of Martin because it is irrelevant to any claims against him. Although the SEC has thrown Martin into some of the claims it has brought against the other Defendants, the vast majority of allegations and evidence arise from a different set of facts, they

would <u>not</u> be admissible against Martin, and they would be unfairly prejudicial to him in a joint

trial.  This includes:

- The SEC's suit against Pardo in 1989;

- The hiring of Dr. Kelly by Pardo (pre-1999);

- The hiring of Dr. Cassidy by Pardo in 1999;

- Pardo's and Peden's alleged statements to investors and shareholders prior to 2008;

- Pardo's and Peden's alleged insider trading;

- The 2003 quarterly report of LPHI's Audit Committee which recommends certain action on the part of LPHI management;

- The contents of LPHI's filings with the Texas Department of Insurance (*see* Doc. 67, ¶ 51: "In 2003, Life Partners began including data in its annual filings with the Texas Department of Insurance ("TDI") reflecting, for matured policies, the difference between Cassidy's LEs and when insureds actually died.  The reports filed by Life Partners for 2003-2009 reveal that insureds underlying approximately 80% of matured policies that the Company brokered had outlived Cassidy's LEs.  The annual reports filed with TDI were prepared by the Company's legal department which Peden oversaw."); and

- The suit against LPHI by the Colorado Securities Commission.

Again, all of these events occurred long before Martin became employed at LPHI and

have nothing to do with the SEC's claims against him.  The Fifth Circuit has warned of the

possible "spill-over" prejudicial effect that this kind of evidence can have against co-defendants.

*See United States v. Erwin*, 793 F.2d 656, 665 (5th Cir. 1986).  Like the defendant in *Erwin*,

there is a strong likelihood that Martin will be unduly prejudiced by evidence offered against

Pardo and Peden because little, if any, will be usable against him and none of it applies to him

directly.  *See id.*

Another example from the SEC's Complaint is the "Second Claim for Relief" alleging a

violation of Rule 10b-5.  *See* Doc. 67, ¶¶ 151-160.  This is the <u>only</u> claim the SEC has brought

6

against all of the Defendants; yet, this claim is plainly based on different facts and evidence. The claim against Martin is ostensibly based solely on his execution of the company's public filings with the SEC. *See id.*, ¶ 152. By contrast, the 10b-5 claims against Pardo and Peden arise from their alleged direct contact with investors and alleged insider trading. *See id.*, ¶¶ 153-56.

Even if one can say that some of the SEC's claims involve a common question of law or fact and arise from the same transaction or occurrence under Rule 20, the Court is not deprived of the authority to sever claims under Rule 21 based on the potential prejudice or unfairness to any of the parties. *See Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571, 574 (5th Cir. 1995) ("Under Rules 20 and 21, the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice.") (emphasis added); *see also Henderson v. AT&T Corp.*, 918 F.Supp. 1059, 1061 (S.D. Tex. 1996); *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28, 30 (S.D. Miss. 1994). Furthermore, a joint trial involving evidence inadmissible against Martin will complicate evidentiary rulings and create a risk that the jury may conclude that Martin is guilty of wrongdoing based solely on the sheer volume of the proof. *See Gruma*, 163 F.Supp.2d 955, 960 (S.D. Tex. 2001). In all likelihood, the Court would be forced to admit evidence it would otherwise exclude and instruct the jury that the evidence can be considered only in support of the claims against other Defendants, and cannot be considered in the case against Martin. Limiting instructions to the jury will not dull the impact of multiple witnesses and substantial documentary evidence admissible, if at all, only against Martin's co-Defendants. *See Henderson*, 918 F.Supp. at 1063 (internal citation omitted). Therefore, the Court should sever the claims against Martin in this case.

## III.   CONCLUSION

For all of the foregoing reasons, Defendant David M. Martin respectfully requests that this Motion for Severance be granted, that the claims against him be severed from this action, and for such other relief to which he may be entitled.

Respectfully submitted,

_____/s/ S. Cass Weiland___
S. Cass Weiland
Texas Bar No. 21081300
Robert A. Hawkins
State Bar No. 00796726
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
(214) 758-1504
(214) 758-1550 (fax)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF CONFERENCE

This is to certify that the undersigned has conferred with counsel for the Plaintiff regarding the foregoing motion and no agreement could be reached. Plaintiff is opposed to the relief requested in the motion.

_____/s/ S. Cass Weiland_____
S. Cass Weiland

030482.0101\4847-7505-5380.2.

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court. All others were served a copy via U.S. mail.

_____/s/ S. Cass Weiland_____
S. Cass Weiland

030482.0101\4847-7505-5380.2.