UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,: | | |
| | : | |
| Plaintiff, | : | Civil Action No.: 1-12-cv-00033 |
| | : | |
| v. | : | |
| | : | |
| LIFE PARTNERS HOLDINGS, INC., BRIAN | : | |
| PARDO, R. SCOTT PEDEN, AND | : | |
| DAVID M. MARTIN | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS
## AND PROPOSED VERDICT FORM

Come now, Defendants LIFE PARTNERS HOLDINGS, INC., R. SCOTT PEDEN, BRIAN PARDO, and DAVID M. MARTIN[1] (collectively "Defendants") and pursuant to the Scheduling Order in this matter and pursuant to Local Rule CV-16(e)(7), submit this their Proposed Jury Instructions and Proposed Verdict Form. Defendants' Proposed Jury Instructions are attached hereto as Exhibit "A," and is intended to be read along with the Agreed Jury Instructions being filed on January 8, 2014.

Defendants' Proposed Verdict Form is attached hereto as Exhibit "B."

---

[1] Defendants' Proposed Jury Instructions and Proposed Verdict Form are being submitted on behalf of David Martin, as well as the other Defendants, pending final resolution of the settlement of the claims against him. Upon resolution of Mr. Martin's claims, any references to him should be removed from both documents.

Respectfully submitted,

/s/ Elizabeth L. Yingling

| | |
|---|---|
| J Pete Laney | Elizabeth L. Yingling |
| State Bar No. 24036942 | State Bar No. 16935975 |
| E-Mail:  jpete@jpetelaney.com | E-Mail: elizabeth.yingling@bakermckenzie.com |
| **LAW OFFICES OF J PETE LANEY** | Laura J. O'Rourke |
| 1122 Colorado Street | State Bar No. 24037219 |
| Suite 111 | E-Mail: laura.orourke@bakermckenzie.com |
| Austin, TX 78701-2159 | Will R. Daugherty |
| Tel: (512) 473-0404 | State Bar No. 24053170 |
| Fax: (512) 672-6123 | E-Mail: will.daugherty@bakermckenzie.com |
| | Meghan E. George |
| | State Bar No. 24074267 |
| /s/ S. Cass Weiland | E-Mail: meghan.george@bakermckenzie.com |
| **PATTON BOGGS LLP** | **BAKER & McKENZIE LLP** |
| S. Cass Weiland | 2300 Trammell Crow Center |
| State Bar No. 21081300 | 2001 Ross Avenue |
| Robert A. Hawkins | Dallas, TX  75201 |
| State Bar No. 00796726 | Tel.: (214) 978-3000, Fax: (214) 978-3099 |
| 2000 McKinney Ave, Suite 1700 | |
| Dallas, Texas 75201 | **ATTORNEYS FOR DEFENDANTS, LIFE** |
| Tel: (214) 578-1500 | **PARTNERS HOLDINGS, INC. AND R.** |
| Fax: (214) 578-1550 | **SCOTT PEDEN** |
| Email: cweiland@pattonboggs.com | |
| Email: rhawkins@pattonboggs.com | |
| **ATTORNEYS FOR DAVID M. MARTIN** | |

/s/ Jay Ethington

Jay Ethington
The Law Firm of Jay Ethington
Texas Bar No. 06692500
3131 McKinney Avenue, Suite 800
Dallas, TX  75204
Tel.:  (214)740-9955, Fax:  (214) 749-9912
Email: jay@jayethington.com
**ATTORNEY FOR BRIAN D. PARDO**

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court.  All others were served a copy via U.S. mail.

/s/ Elizabeth L. Yingling

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS AND PROPOSED VERDICT FORM – Page 2**

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | Case No.: 1:12-cv-00033-JRN |
| **LIFE PARTNERS HOLDINGS, INC., BRIAN** | § | |
| **PARDO, R. SCOTT PEDEN, and** | § | |
| **DAVID M. MARTIN** | § | |
| | § | |
| **Defendants.** | § | |

_____

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**COURT'S PRELIMINARY INSTRUCTIONS**

    **[The Parties have submitted agreed instructions.]**

<u>**COURT'S INSTRUCTION NO. ___**</u>

**Section 10(b) and Rule 10b-5 – Securities Fraud**

The SEC alleges that LPHI, Pardo, Peden and Martin each committed securities fraud by violating Section 10(b) of the Exchange Act and Rule 10b-5.  In order to prevail on its claim that the defendants violated Section 10(b) and Rule 10b-5, the SEC must prove each of the following elements by a preponderance of the evidence:[1]

**First:**      That Defendants, directly or indirectly, made any untrue statement of material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading.

The words "directly" and "indirectly" should be given their straightforward meanings.

**Second**:      That Defendants, while engaging in this conduct, acted knowingly or with severe recklessness;

**Third**:      That Defendants' conduct was in connection with the purchase or sale of a security; and,

**Fourth**:      That Defendants used, or caused to be used, the means and instrumentalities of interstate commerce.

I will now explain each of these elements in more detail.

---

[1] *SEC v. Gann*, 565 F.3d 932, 936 n.10 (5th Cir. 2009) (Section 10(b) and Rule 10b-5 have same scope of liability); *see SEC v. Seghers*, 298 Fed.Appx. 319, 327 (5th Cir. 2008) (setting out elements for SEC action); *cf.* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 7.1 (2006) (setting out elements for private action).

<u>**Defendants' Proposed Jury Instructions**</u> – Page 2

**Misrepresentation or Omission of Material Facts**

The SEC must prove by a preponderance of the evidence that Defendants LPHI, Pardo, Peden, and Martin made a statement of material fact that was false or misleading.[2]  The SEC must prove both:

1.  That Defendants made one or more misrepresentations of fact [or omitted to state facts which would be necessary to prevent Defendants' other statements from being misleading], and

2.  That the misrepresentation [or omission] involved "material" facts.

A "misrepresentation" is a statement that is not true.[3]

I have previously instructed you on what material means.  It has the same meaning

It is up to you to decide based on all the relevant evidence whether the facts allegedly stated, or allegedly omitted, by the defendants were material.[4]

The SEC alleges that the defendants misled shareholders of LPHI by (1) representing that the LEs used by LPHI's subsidiary Life Partners, Inc. *could* be high or low when they actually knew that the company systematically used materially underestimated, or low, LEs; and (2) misrepresenting the manner in which the company recognized revenue and impaired assets.

To prove that a statement about a contingency, or a possible occurrence, is fraudulent, the SEC must show that unfavorable events merely cautioned by the defendants had already occurred, or were very likely to occur.[5]

---

[2] Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

[3] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 7.1 (2006).

[4] *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996) ("Because materiality is a mixed question of law and fact, it is usually left for the jury."); *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993) ("Materiality is not judged in the abstract, but in light of the surrounding circumstances); *SEC v. Fox*, 855 F.2d 247, 253 (5th Cir. 1988) ("[E]ven where the facts are sufficient to support a finding of materiality, the question of materiality is within the legitimate province of the finder of fact.") (quotation marks and ellipses omitted).

*The Knowing Conduct Element*

The second element that the SEC must prove by a preponderance of the evidence is that Defendants LPHI, Pardo, Peden, and Martin acted "knowingly."  This is sometimes referred to as the required state of mind, or scienter, of each Defendant.  It is not enough to show that the defendants acted accidentally, or merely made a mistake, or even that they were negligent.[6]  Rather, it must be shown that the defendants acted with a mental state embracing intent to deceive, manipulate or defraud.[7]

You can also find that the Defendants acted "knowingly" if you find that they acted with severe recklessness.  In the context of the securities laws, severe recklessness means conduct that is such an extreme departure from standards of ordinary care that it presents a danger of misleading buyers or sellers which is either known to the defendants or was so obvious that the defendants must have been aware of it.[8]

The question of whether a person acted knowingly because he either intended to defraud or was severely reckless is a question of fact for you to determine, like any other fact question.  It

---

[5] *See Huddleston v. Herman & MacLean*, 640 F.2d 534, 544 (5th Cir. 1981) (*aff'd in part, rev'd on other grounds* (holding that "[t]o warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit.").  *See also Lormand v. Us Unwired, Inc.*, 565 F.3d 228, 249 (5th Cir. 2009) (holding that company officials engaged in fraud by omitting known risks to their business plan, although they recognized signs that the dangers they privately predicted had already materialized) and *In re Prudential Sec. Inc. L.P. Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (concluding that "[g]eneral risk disclosures in the face of specific known risks which border on certainties does not bespeak caution," and "provide[] no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.")

[6] Fifth Circuit Pattern Jury Instructions (Civil Cases) § 7.1 (2006) ("the plaintiff does not satisfy the burden of proof merely by showing that the defendant acted accidentally or that the defendant made a mistake").

[7] *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) ("To have acted with scienter, the defendant must have acted with a mental state embracing intent to deceive, manipulate, or defraud.")(quotation marks omitted).

[8] *SEC v. Seghers*, 298 Fed.Appx. 319, 333 (5th Cir. 2008) ("Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a  danger of misleading buyers or sellers that the defendant must have been aware of it.  Scienter may be found if a reasonable jury can conclude that the defendant knew his statements were false when made.") (citations omitted); *Meadows v. SEC*, 119 F.3d 1219, 1226 (5th Cir. 1997) (same); *SEC v. Sw. Coal & Energy Co.*, 624 F.2d 1312, 1321 n.17 (5th Cir. 1980) (same).

is a question involving the state of mind of the defendants.  Direct proof of state mind is almost never available, and it is not required.[9]  Therefore, whether the defendant acted knowingly maybe established by circumstantial evidence based on a person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.[10]

In this case, Defendants Pardo, Peden, and Martin have presented evidence that they relied on the advice of accountants and other experts in good faith. Good faith reliance on the advice of an accountant or other expert may represent the absence of any intent to defraud or knowledge of wrongdoing, and should therefore be considered in any question that requires reckless, knowing, or intentional conduct. To decide whether such reliance was in good faith, you may consider whether Defendants sought the advice of a competent accountant concerning the material facts allegedly omitted or misrepresented, whether Defendants gave the accountant all the relevant facts known to them at the time, and whether Defendants received an opinion from the accountant that they could reasonably rely upon.[11]

---

[9] 4-82 Leonard Sand, et al., *Modern Federal Jury Instructions—Civil*, ¶ 82.02, Instruction 82-8 (2013); *United States v. Prince*, 496 F.2d 1289, 1293 (5th Cir. 1974) (affirming Section 10(b) conviction and noting that "direct proof of the appellant's state of mind . . . is not required"); *United States v. LaPlante*, 714 F.3d 641, 644 (1st Cir. 2013) (affirming a jury charge in which the district court explained that "direct proof of intent . . . is not required; intent may be 'established by circumstantial evidence'").

[10] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983) (noting that "circumstantial evidence can be more than sufficient" to prove scienter); *Nathaenson v. Zonagen, Inc.*, 267 F.3d 400, 410 (5th Cir. 2001) ("Congress plainly contemplated that scienter could be proven by inference, thus acknowledging the role of indirect and circumstantial evidence.") (citation and quotation marks omitted).

[11] *United States v. Peterson*, 101 F.3d 375, 381 n.5 (5th Cir. 1996); *United States SEC v. Snyder*, 292 Fed. Appx. 391, 406 (5th Cir. 2008).

### *In Connection With the Purchase or Sale of a Security Element*

The third element the SEC must prove by a preponderance of the evidence is that the Defendants' conduct occurred in connection with the purchase or sale of a security.  [The parties have stipulated that the stock of LPHI is a security.   The parties have also stipulated that LPHI stock was offered, sold, and purchased between 2007 and 2011.]

The "in connection with" element is satisfied if you find that there was some connection or relation between the allegedly fraudulent act and the purchase or sale of securities.[12] The SEC need not prove, however, that anyone actually did rely on the documents that included the allegedly material misstatements or omissions.

---

[12] *SEC v. Zandford*, 535 U.S. 813, 821-22 (2002) (the in connection with requirement must be read flexibly and broadly, and "[i]t is enough that the scheme to defraud and the sale of securities coincide"); *United States v. O'Hagen*, 521 U.S. 642, 656 (1997) (the in connection with requirement was met because "the securities transaction and the breach of duty . . . coincide[d]"); *SEC v. Hopper*, 2006 WL 778640 *11 (S.D. Tex. 2006) (Werlein, J.) (the in connection with requirement is satisfied "when the defendants' deceptive conduct affects a market for securities") (citation and quotation marks omitted).

*Interstate Commerce Element*

The fourth element the SEC must prove by a preponderance of the evidence is that the defendant used, or caused to be used, any means or instrumentality of interstate commerce in connection with the securities transactions involved in this case.  It is not necessary that a misrepresentation or omission occur during the use of the instrumentality of interstate commerce.[13]

This element includes, for example, any use of the mails, the telephone, faxes or other electronic transmission of documents, or wiring or electronically transferring funds, in connection with the purchase or sale of securities.  All that is required is that those methods be used by anyone in some phase of the purchase or sale.  The element can also be satisfied if the facilities of a national securities exchange were used in connection with the purchase or sale.  NASDAQ is a national securities exchange.  The parties have stipulated that LPHI stock was purchased and sold on the NASDAQ between 2007 and 2011.

---

[13] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 7.1 (2006) (modified).

**COURT'S INSTRUCTION NO.**

**Aiding and Abetting LPHI's violations of Section 10(b) and Rule 10b-5**

The SEC contends that Defendants Pardo, Peden, and Martin each aided and abetted

LPHI's violations of Section 10(b) and Rule 10b-5.

In order to prevail on this claim, the SEC must prove by a preponderance of the evidence:

**First**: A violation of Section 10(b) and Rule 10b-5 by LPHI;

**Second**: That Defendants Pardo, Peden, and/or Martin had a general awareness that his

role was part of LPHI's violation; and

**Third**: That Defendants Pardo, Peden, and/or Martin knowingly rendered substantial

assistance in furtherance of LPHI's violation.[14]

I will now discuss each of these requirements in detail.

---

[14] *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 255 (5th Cir. 2011).

**Defendants' Proposed Jury Instructions** – Page 8

**COURT'S INSTRUCTION NO.**

**Aiding and Abetting violation of Section 10(b) and Rule 10b-5: Primary violation by LPHI**

The first element that the SEC must prove by a preponderance of the evidence in support of its claim against Pardo, Peden, and Martin for aiding and abetting is that LPHI violated Section 10(b) and Rule 10b-5.In order to establish that LPHI violated Section 10(b) and Rule 10b-5, the SEC must show that an officer or employee of LPHI violated Section 10(b) and Rule 10b-5 according to the instructions set forth in the Court's Instruction No. _____.

## COURT'S INSTRUCTION NO.

### General Awareness of Wrongdoing

General awareness of wrongdoing means knowledge of wrongdoing.[15]

Knowledge of the wrongdoing may be satisfied by proof of reckless conduct.[16]

Reckless conduct is conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.[17]

While it is unnecessary to show that an aider and abettor knew he was participating in or contributing to a securities law violation, there must be sufficient evidence to establish conscious involvement in impropriety.

If the SEC has shown that Pardo and/or Peden and/or Martin knew that the statements made in, or facts omitted from, LPHI's Forms 10-K, 10-KSB, 10-Q, 10-QSB, or conference calls with shareholders were misleading, or if the misleading nature was so obvious that the defendants must have been aware of it, then this element is satisfied.[18]

I have previously instructed you regarding Defendants' possible reliance on the advice of accountants or experts. This instruction also applies to the question of "general awareness of wrongdoing."

---

[15] *Howard v. SEC*, 376 F.3d 1136, 1142 (D.C. Cir. 2004); *SEC v. Penthouse Intern., Inc.,* No. 05 Civ. 0780RWS, 390 F. Supp. 2d 344, 2005 WL 2415947 (S.D.N.Y. Sep 29, 2005) ("[t]o establish aiding and abetting liability for violation of securities law, the Securities and Exchange Commission (SEC) must establish (1) the existence of a securities law violation by the primary, as opposed to the aiding and abetting, party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation (emphasis added)").

[16] *Lazzaro v. Manber*, 701 F. Supp. 353, (E.D.N.Y. 1988) (holding that "[t]he element of knowledge of the purported violation may be satisfied by proof of reckless conduct").

[17] *SEC v. Steadman*, 967 F.2d 636, 641-42 (D.C. Cir. 1992) (quoting *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir.1977)).

[18] *Fine v. American Solar King, Corp.,* 919 F.2d 290, 298 (5th Cir. 1990) (quoting *SEC v. Southwest Coal & Energy Co.*, 624 F.2d 1312, 1321, n.17 (5th Cir. 1980)).

**COURT'S INSTRUCTION NO. ___**

**Knowingly Rendered Substantial Assistance**

The SEC must prove by a preponderance of the evidence that Defendants Pardo, Peden, and/or Martin knowingly rendered substantial assistance to LPHI in its own violation of Section 10(b) and Rule 10b-5.

*Knowingly*

"Knowingly" means to act intentionally, deliberately, or recklessly, rather than mistakenly or inadvertently.

To establish that Defendants Pardo, Peden, and/or Martin acted knowingly, the SEC does not satisfy its burden of proof merely by showing that the Defendants acted accidentally or that the Defendants made a mistake. The SEC must show that the Defendants acted with an intent to deceive, manipulate, or defraud. In other words, the SEC must show that each Defendant stated material facts he knew to be false, or stated untrue facts with reckless disregard for their truth or falsity, or knew of the existence of material facts that were not disclosed although he knew that knowledge of those facts would be necessary to prevent his other statements from being misleading. [19]

"Recklessly" means an extreme departure from the standards of ordinary care that presents a danger of misleading buyers or sellers which is either known to the defendant or so obvious that he must have been aware of it. [20]

---

[19] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 7.1 (2006) (modified).
[20] *Goldstein v. MCI Worldcom,* 340 F.3d 238, 245-46 (5th Cir. 2003).

*Substantial Assistance*

In order to establish that Defendants Pardo, Peden, and/or Martin provided substantial assistance in furtherance of LPHI's violation of Section 10(b) and Rule 10b-5, the SEC need only prove by a preponderance of the evidence that the Defendants' conduct was a substantial causal factor in the perpetration of LPHI's violation. Inaction may be a form of "substantial assistance" if you find that the silence of the defendant was consciously intended to aid LPHI in committing the violations.[21] For instance, silence that fails to correct a prior false statement is a form of "substantial assistance."

I have previously instructed you regarding Defendants' possible reliance on the advice of accountants or experts. This instruction applies to the question of whether conduct was committed "knowingly" or "recklessly."

---

[21] *Ponce v. SEC*, 345 F.3d 722, 737 n.10 (9th Cir. 2002) (no scienter required); *SEC v. McNulty*, 137 F.3d 732, 740-41 (2d Cir. 1998) (no scienter required); *SEC v. Coffey*, 493 F.2d 1304, 1317 (6th Cir. 1974)("[i]naction may be a form of assistance in certain cases, but only where it is shown that the silence of the accused aider and abettor was consciously intended to aid the securities law violation")*SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 865-66 (S.D.N.Y. 1997) ("there is no scienter requirement [under Rule 13b2-1]; liability is predicated on 'standards of reasonableness.'").

**COURT'S INSTRUCTION NO. __**

**Section 10(b) and Rule 10b-5 – Insider Trading**

The SEC also alleges that Defendants Pardo and Peden have also violated the antifraud provisions contained in Section 10(b) and Rule 10b-5 through insider trading.  As I have explained, Section 10(b) and Rule 10b-5 make it unlawful for anyone to employ any device, scheme, or artifice to defraud in connection with the purchase or sale of any security.

One such fraudulent scheme is "insider trading," which – as I will describe further – prohibits purchases or sales of securities based upon material information that has not been publicly disclosed.  In other words, the use of nonpublic information for securities trading purposes constitutes a deceptive device prohibited under the law.  In this case, the SEC alleges that Pardo and Peden each engaged in insider trading.[22]

---

[22]     *Merrill Lynch, Pierce, Fenner & Smith v. Dabit,* 547 U.S. 71, 85 (2006); *United States v. O'Hagan*, 521 U.S. 642, 655-56 (1997); *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 US 6, 12-13 (1971); *United States v. Larrabee*, 240 F.3d 18, 24 (1st Cir. 2001); *SEC v. Sargent*, 229 F.3d 68, 75 (1st Cir. 2000); *United States v. Newman*, 664 F.2d 12, 18 (2d Cir. 1981); *SEC v. Pirate Investor,* 580 F.3d 233, 244 (4th Cir. 2009); *SEC v. Clark*, 915 F.2d 439, 449 (9th Cir. 1990).

**COURT'S INSTRUCTION NO. __**

**Insider Trading – Elements**

The SEC contends that Defendants Pardo, Peden, and Martin each aided and abetted LPHI's violations of Section 10(b) and Rule 10b-5.

In order to prevail on its "insider trading" claim under Section 10(b) and Rule 10b-5, the SEC must establish each of the following elements by a preponderance of the evidence:

**First:**    That the Defendants Pardo and Peden were each an "insider";

**Second:**    That Defendants Pardo and Peden possessed material, nonpublic information;

**Third:**    That Defendants Pardo and Peden used material, nonpublic information to buy or sell securities of LPHI;

**Fourth:**    That Defendants Pardo and Peden acted intentionally or recklessly; and

**Fifth:**    That an instrumentality of interstate commerce, or of the mails, was used inconnection with Defendants Pardo and Peden's buying or selling LPHI securities.[23]

---

[23] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 7.1 (2004); *U.S. v. O'Hagan*, 521 U.S. 642, 6551-52 (1997) ("[u]nder the 'traditional' or 'classical theory' of insider trading liability, § 10(b) and Rule 10b-5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information"), quoted in *US v. Smith*, 155 F.3d 1051, 1063-64 (9th Cir. 1998); *SEC v. Adler*, 137 F.3d 1325, 1340 (11th Cir. 1998) (holding that "the SEC must also prove that the material, nonpublic information was used in the trade); US v. Cassese, 273 F. Supp. 2d 481, 485 (S.D.N.Y. 2003) ("[t]raditional insider trading is . . . a corporate insider who bought or sold securities of his corporation's stock based on material, nonpublic information"); *In re Enron Corp. Securities, Derivative and ERISA Litigation*, 258 F. Supp. 2d 576, 591 (S.D. Tex. 2003) (noting that "[u]nder the traditional or 'classical' theory of insider trading, insider trading may constitute a violation of § 10(b) and Rule 10b-5 'when a corporate insider trades in the securities of his corporation on the basis of material nonpublic information'"); Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)]; Rule 10b-5 [17 C.F.R. § 240.10b-5].

**COURT'S INSTRUCTION NO. __**

**"Insider"**

　　The SEC must show that Pardo and/or Peden were "insiders" of LPHI. An "insider" is someone who has access, directly or indirectly, to information intended to be available only for a corporate purpose and not for the personal benefit of anyone.[24] Officers and directors of a corporation are "insiders" if they obtained confidential information through their positions with the corporation.[25]

---

[24] *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968); *SEC v. Fox*, 654 F. Supp. 781, 790 (N.D. Tex. 1986) ("[i]nsiders are individuals 'who are in a special relationship with a company and privy to its internal affairs, and thereby suffer correlative duties in trading in its securities'") (*quoting Cady, Roberts & Co.*, 40 S.E.C. 907, 9121961 WL 60638 *3 (Nov. 8, 1961)).

[25] *SEC v. Fox*, 654 F. Supp. 781, 790 (N.D. Tex. 1986) (quoting *SEC v. Texas Gulf Sulphur Co.* 401 F.2d 833 (2d Cir. 1968); SEC v. Hoover, 903 F.Supp.1135, 1139-40 (S.D. Tex. 1995); *In re Enron Corp. Securities, Derivative and ERISA Litigation*, 258 F. Supp. 2d 576, 591 (S.D.Tex. 2003) ("[d]irectors, officers, and principal shareholders all qualify as corporate insiders under section 10(b), if they have obtained confidential information through their positions with the corporation").

## COURT'S INSTRUCTION NO. __

**Possession of Material, Nonpublic Information**

The SEC may prove the first element by establishing by a preponderance of the evidence that Defendants Pardo and/or Peden possessed material, non-public information to exercise stock options, or to buy or sell stock.  Material, non-public information is also known as "inside information."[26]

I have previously instructed you on what "material" means.  It has the same meaning here.

"Nonpublic" information is information which is not generally available to the public through such sources as press releases, trade publications, or other publicly available sources.[27]

To constitute non-public information, information must be specific and more private than general rumor.[28]

Information remains "nonpublic" until it either:

1.  Has been disclosed to achieve broad dissemination to the investing public generally

     and without favoring any special person or group, or

Is known only by a few persons, but their trading on it has caused the information to be fully reflected in the price of the particular stock

## COURT'S INSTRUCTION NO. __

---

[26] *SEC v. Adler*, 137 F.3d 1325, 1337 n.32 (11th Cir. 1998) (court used 'inside information' in its discussion as shorthand for material, nonpublic information).

[27] *U.S. v. Cusimano*, 123 F.3d 83, 89 n.6 (2nd Cir.1997) "[i]nformation is nonpublic if it is not available to the public through such sources as press releases, Securities and Exchange Commission filings, trade publications, analysts' reports, newspapers, magazines, rumors, word of mouth or other sources'"); *SEC v. O'Hagan*, 901 F. Supp. 1461, 1463 (D. Minn. 1995) ("illegal insider trading exists when a defendant, through a relationship of trust and confidence, gains access to material, nonpublic information intended to be used only for corporate purposes, and the defendant trades in the stock of a publicly traded company using information which is not available to the public").

[28] *US v. Mylett*, 97 F.3d 663, 666 (2d Cir. 1996) ("To constitute non-public information under the [Securities Exchange Act of 1934], information must be specific and more private than general rumor").

**Use of Material, Nonpublic Information**

      The SEC may prove the second element by establishing by a preponderance of the evidence that DefendantsPardo and/or Peden used the inside information to buy or sell securities of LPHI.  First, of course, you must determine that the defendant knew or possessedmaterial, nonpublic information at the time the insider trades.[29]  Information Defendants learned or possessed after the time of their trades cannot be a basis for the SEC's insider trading claim.[30]

      If you find that the defendant knew or possessed material, nonpublic information at the time he bought or sold securities of LPHI, then you must give the SEC the benefit of a strong inference that the defendant used his inside information to buy or sell the securities.[31]

      The defendant may attempt to rebut this strong inference by presenting evidence that there was no causal connection between the information and his trading – in other words that the information was not used or that there was an innocent explanation for the trades.[32]  The defendant cannot overcome the presumption merely by showing that he had a generalized intention to sell stock in the future or that he had a legitimate use for the sales proceeds.[33]

      You should determine whether the defendant used the inside information based upon all the evidence.

---

[29] *SEC v. Adler*, 137 F.3d 1325, 1340 (11th Cir. 1998).

[30] *SEC v. Hoover,* 903 F. Supp. 1135, 1139 (S.D. Tex. 1995).

[31] *SEC v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004) (proof that defendant had knowledge of material, nonpublic information at the time of a trade gives rise to a strong inference that defendant used the information); *SEC v. Adler*, 137 F.3d 1325, 1337 (11th Cir. 1998).

[32] *See, e.g., SEC v. Ginsburg*, 362 F.3d 1292, 1301 (11th Cir. 2004) (holding that the jury was entitled to judge whether the defendant's innocent explanations for the trades rebutted an inference that the suspicious trades were driven by outside information).

[33] *SEC v. Lipson*, 278 F.3d 656, 661 (7th Cir. 2002) ("If the existence of an alternative legitimate purpose were a defense to a charge of insider trading, any insider who wanted to be able to engage in such trading with impunity would establish an estate plan that required him to trade in his company's stock from time to time but gave him discretion as to when and how much to trade").

**Defendants' Proposed Jury Instructions** – Page 17

## COURT'S INSTRUCTION NO.

**State of Mind**

To prevail on its insider trading claims, the SEC must prove by a preponderance of the evidence that Pardo and/or Peden acted knowingly and with intent to deceive, manipulate or defraud, or acting with reckless disregard of the consequences.[34]  This does not include acting just mistakenly or inadvertently.[35]  I have previously instructed you on the definitions of "knowing" and "reckless" conduct.  These terms have the same meaning here.

---

[34] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n. 12 (1976) ("[i]n this opinion the term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud), quoted in, *SEC v. First Financial Group of Texas*, 645 F.2d 429, 435, n. 9 (5th Cir. 1981) ("'[s]cienter' has been defined by the Supreme Court as 'a mental state embracing intent to deceive, manipulate, or defraud'" . . . and includes "'knowing or intentional misconduct'"); *SEC v. Antar*, 15 F. Supp. 2d 477, 529 (D.N.J. 1998) ("'scienter' includes both knowing and reckless misconduct").

[35] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 7.1 (2004).

**COURT'S INSTRUCTION NO. __**

**Interstate Commerce**

The last element, with respect to its insider trading claims, that the SEC must prove by a preponderance of the evidence is that Pardo and/or Peden knowingly used, or caused to be used, any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, in furtherance of his insider trading.

The use of an "instrumentality of interstate commerce" means, for example, the use of the mails or the telephone.  All that is required is that the mails or the telephone be used in some phase of the defendant's transactions.[36]  This element can also be satisfied if the facilities of a national securities exchange were used in connection with the purchase or sale.  NASDAQ is a national securities exchange.[37]

---

[36] Section 10(b) of the Exchange Act, 15 U.S.C. Section 78j(b); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) § 2.20 (2006) (Modified).

[37] *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 862 (S.D.N.Y. 1997) ("The jurisdictional requirements of Sections 17(a) and 10(b) and Rule 10b-5 are broadly construed, so as to be satisfied by any activity connected with a national securities exchange, by intrastate telephone calls, and by even the most ancillary mailings").

<u>**COURT'S INSTRUCTION NO. \_\_\_\_**</u>

**Section 17(a)(1)—Securities Fraud**

The SEC alleges that LPHI, Pardo, and Peden each individually violated Section 17(a) of the Securities Act.  Section 17(a) has three parts.  I will explain each part separately, because each subsection is an independent basis of possible liability.

***Securities Fraud under Section 17(a)(1)***

In order to prevail on its claim that LPHI, Pardo, and/or Peden violated Section 17(a)(1), the SEC must prove each of the following elements by a preponderance of the evidence:

**First:**     That Defendants LPHI, Pardo, and Peden misrepresented, failed to disclose, and/or made misleading omissions regarding the company's revenue recognition policies in public filings with the Commission in January and February 2007;

**Second:**     That Defendants LPHI, Pardo, and Peden did so knowingly, meaning that they acted with intent to defraud, or with reckless disregard for the truth;

**Third:**     That Defendants LPHI, Pardo, and Peden s did so in connection with the offer or sale of any securities; and,

**Fourth:**     That Defendants LPHI, Pardo, and Peden used, or caused to be used, the means and instrumentalities of interstate commerce.

As you've probably noticed, the first, second, and fourth elements the SEC must prove by a preponderance of the elements under Section 17(a) are the same as the elements it must prove under Section 10(b).  For that reason, the instructions I gave you when discussing those elements

for Section 10(b) also apply to the Section 17(a) elements.[38]  If you found, in considering the violation of Section 10(b), that the SEC proved those elements by a preponderance of the evidence, you also found those elements proven for the purposes of the Section 17(a) violation.[39]

The third element is different.  Section 17(a) covers fraud only in "offers" to sell and actual sales of a security.[40]  "Offer" is defined broadly, and it includes any and every attempt to offer or dispose of a security.[41]  In other words, an "offer" includes negotiations to sell, or attempts to produce a sale by urging or persuading another to act.[42]  "Sale" also is defined broadly, and includes every contract of sale or other disposition of a security or an interest in a security for value.[43]  "Disposition" means a final settlement of a matter, like transferring title, and "for value" means that you received money or something else valuable.[44]  The SEC need not prove that any investors bought the securities that were offered for sale.[45]

To simplify matters, if you find that LPHI, Pardo, or Peden did not violate Section 10(b) and Rule 10b-5, then you must find that defendant did not violate Section 17(a)(1).  On the other hand, if you find that the defendants violated Section 10(b) and Rule 10(b)(5), and then also find that the conduct of LPHI, Pardo, or Peden was in connection with the offer or sale of a security, then it is your duty to find that the defendant violated Section 17(a)(1).

---

[38] *SEC v. Spence & Greene Chemical Co.*, 612 F.2d 896, 903 (5th Cir. 1980) ("the proscriptions of section 17(a) are substantially the same as those of section 10(b) and rule 10b-5").

[39] Jury Charge, Dkt.#187 at 150 [2439:10-15], *SEC v. O'Meally*, No. 06-6483 (S.D.N.Y. 2012) (modified).

[40] Securities Act Section 17(a), 15 U.S.C. § 77q(a).

[41] *United States v. Naftalin*, 441 U.S. 768, 773-74 (1979) (citing the definition of "offer" in Securities Act Section 2(3) when construing "offer" in Section 17(a)).

[42] Jury Charge, Dkt.#433-3 at 17, *SEC v. Tourre*, No. 10-3229 (S.D.N.Y. 2013).

[43] *United States v. Naftalin*, 441 U.S. 768, 773-74 (1979) (citing the definition of "sale" in Securities Act Section 2(3) when construing "offer" in Section 17(a)).

[44] Jury Charge, Dkt.#433-3 at 17, *SEC v. Tourre*, No. 10-3229 (S.D.N.Y. 2013) (modified).

[45] *United States v. Naftalin*, 441 U.S. 768, 773 (1979) ("The statutory language does not require that the victim of the fraud be an investor—only that the fraud occur "in" an offer or sale."); *see also First Nat'l Bank of Las Vegas, N.M. v. Estate of Russell*, 657 F.2d 668, 674 N.18 (5th Cir. 1981) (citing Naftalin) ("That the securities were not delivered does not preclude a finding that a sale occurred.").

**<u>COURT'S INSTRUCTION NO.</u>**

**Section 13(a) and Rules 12b-20, 13a-1, and 13a-13**

The SEC also claims that LPHI filed Forms 10-Q, 10QSB, 10-K, and 10KSB with the SEC between January 2007 and November 2011 that contained false statements of material fact, or failed to state material information necessary under the circumstances to make the statements in them not misleading.

Section 13(a) and Rules 13a-1 and 13a-13 require companies that have stock or other securities registered in a national securities exchange to file reports required by the SEC, including Forms 10-Q, 10-QSB, 10-K, and 10-KSB. These reports must be factually accurate. In addition to the information expressly required to be included in these reports, companies must add such further material information as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading. I have previously instructed you on what material means. It has the same meaning here.

There is no requirement that LPHI have acted knowingly or recklessly to violate these provisions.[46]

In order to find LPHI liable for violating Section 13(a) and Rules 12b-20, 13a-1 and 13a-13, the SEC must establish each of the following elements by a preponderance of the evidence:

**First:** That LPHI filed Forms 10-Q, 10-QSB, 10-K, and 10-KSB with the SEC that contained false statements of material fact, or failed to include material information that was necessary, under the circumstances, to make the statements not misleading;

**Second:** That LPHI is liable as a corporation for any such failure.[47]

---

[46] 15 U.S.C. § 78m(a)

**COURT'S INSTRUCTION NO.** ___

**Aiding and Abetting – Section 13(a) and Rules 12b-20, 13a-1, and 13a-13**

The SEC claims that Defendants Pardo, Peden and Martin each aided and abetted LPHI's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13, by making false or misleading statements or omissions in Forms 10-Q, 10QSB, 10-K, and 10KSB between 2007 and 2011.

Companies must file periodic reports with the SEC, including annual and quarterly reports. Section 13(a) and Rules 13a-1 and 13a-13 require that companies make those reports factually accurate and not omit information that would otherwise make the information in the reports not misleading. Rule 12b-20 provides that in addition to the information expressly required to be included in a statement or report, the company shall add such further material information as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading. I have previously instructed you on what material means.

To prove its claim of aiding and abetting, the SEC must establish by a preponderance of the evidence that:

**First:**    LPHI committed one or more violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13 due to filing with the SEC materially false or misleading reports. This may be established by showing that any one of LPHI's employees or officers, including either of the defendants, committed the violative acts;

---

[47] 15 U.S.C. § 78m(a), 17 C.F.R. § 240.13a-13, 17 C.F.R. § 240.12b-20

**Second:**   Defendants Pardo, Peden, and/or Martin had knowledge of the primary

violation and of his role in furthering it; and

**Third:**   Defendants Pardo, Peden, and/or Martin provided substantial assistance in the

primary violation.

Inaction may be a form of "substantial assistance" if you find that the silence of Pardo and/or Peden and/or Martin was intended to aid LPHI in committing the violations.[48]

I have previously instructed you regarding Defendants' possible reliance on the advice of accountants or experts. This instruction also applies to the question of whether or not Defendants had knowledge of LPHI's alleged violation and knowledge of their role in furtherance of it.

---

[48] Section 13(a) of the Securities Act of 1934, 15 U.S.C. § 78m; Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 13a-13.  Section 20(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(e).  *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2002).

<u>**COURT'S INSTRUCTION NO.**</u>

**Section 13(b)(2)(A) and 13(b)(2)(B)– Books and Records**

The SEC claims that LPHI violated Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act by falsifying or causing the falsification of its books, records and accounts.

Section 13(b)(2)(A) of the Exchange Act requires LPHI to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the company's transactions and the disposition of its assets.[49]

Section 13(b)(2)(B) of the Exchange Act requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with Generally Accepted Accounting Principles ("GAAP") and to maintain the accountability of assets.[50]

The Exchange Act defines the term "records" to mean accounts, correspondence, memoranda, tapes, discs, papers, books and other documents or transcribed information of any type, whether expressed in ordinary or machine language. Financial statements themselves constitute books and records within the meaning of this provision.

There is no requirement that the issuer have acted knowingly or recklessly to violate these sections. Instead, the standard is whether or not the issuer acted reasonably.[51]

Further, there is no requirement of materiality.[52] The book, record, or account need not be "materially" inaccurate or false. That is, the inaccuracy or falsity need not be one on which a reasonable investor would have based his investment decision. Instead, the standard is one of reasonableness.

To prove its claim that LPHI violated Section 13(b)(2)(A) of the Exchange Act, the SEC must show that LPHI failed to make and keep books, records, and accounts, which, in reasonable

---

[49] 15 U.S.C. § 78m(b)(2)(A).

[50] 15 U.S.C. § 78m(b)(2)(B).

[51] *SEC v McNulty*, 137 F3d 732 (2d Cir. 1998), cert. den. 525 US 931 (1998); *SEC v World-Wide Coin Inv.*, 567 F. Supp 724 . (N.D. Ga. 1983).

[52] *In re Albert Glenn Yesner, CPA* 2001 SEC LEXIS 1978 (2001).

<u>**Defendants' Proposed Jury Instructions**</u> – Page 25

detail, accurately and fairly reflect LPHI's transactions and dispositions of its assets.

To prove LPHI violated Section 13(b)(2)(B) of the Exchange Act, the SEC must show that LPHI failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:

(a)   LPHI transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements; and that

(b)   LPHI maintained accountability of its assets.

I have previously instructed you regarding Defendants' possible reliance on the advice of accountants or experts. This instruction also applies to the question of reasonableness.

**COURT'S INSTRUCTION NO.__**

**Aiding and Abetting - Section 13(b)(2)(A) and 13(b)(2)(B) – Books and Records**

I have just described the requirements of Sections 13(b)(2)(A) and 13(b)(2)(B) in connection with the SEC's allegation against LPHI.  To prove its claim of aiding and abetting against Defendants Pardo, Peden, and Martin, the SEC must establish the following elements by a preponderance of the evidence:

**First:**  LPHI committed one or more violations of Section 13(b)(2)(A) or Section 13(b)(2)(B) of the Exchange Act.  This may be established by showing that any one of LPHI's employees or officers, including either of the defendants, committed the violative acts;

**Second:**  Defendants Pardo, Peden, and/or Martin had a general awareness of LPHI's violation; and

**Third:**  Defendants Pardo, Peden, and/or Martin provided substantial assistance in LPHI's violation.

I have previously instructed you regarding the meaning of "general awareness" and reliance on the advice of accountants and experts. Those have the same meaning here.

I have also previously instructed you regarding the meaning of "substantial assistance." It has the same meaning here.

**<u>COURT'S INSTRUCTION NO.</u>**

**Section 13(b)(5) Books and Records**

The SEC claims that the Defendants Pardo, Peden, and Martin each knowingly falsified one or more of LPHI's books, records, or accounts described below.  The SEC also claims that these defendants knowingly circumvented or knowingly failed to implement a system of internal accounting controls.  The SEC does not have to prove both theories.

To prove this claim, the SEC must show by a preponderance of the evidence that Pardo, Peden, and Martin knowingly either:

1.  Falsified any of LPHI's books, records, or accounts that reflect the transactions or dispositions of LPHI's assets; or

2.  Circumvented LPHI's system of internal accounting controls; or

3.  Failed to implement a system of internal accounting controls at LPHI.[53]

The term "knowingly" as used in § 13(b)(5) means intentionally; recklessness is not sufficient.[54]

I have previously instructed you regarding Defendants' possible reliance on the advice of accountants or experts. This instruction applies to the question of whether or not conduct was "intentional."

The terms "books, records, or accounts" mean accounts, correspondence, memoranda, tapes, discs, papers, books, and other documents or transcribed information of any type, whether expressed in ordinary or machine language. The SEC must prove by a preponderance of the evidence that the book, record, or account does not, in reasonable detail, accurately and  fairly reflect the transactions and dispositions of the company's assets.[55]

---

[53] 15 U.S.C. § 78m(b)(5); Plaintiff's Proposed Jury Instruction No. 14, Dkt. 377; Court's Jury Instruction No. 23 (modified), Dkt. 406, *SEC v. Kovzan,* No. 11-2017 (D. Kan. 2013).
[54] *Id.*
[55] *Id.*

The phrase "system of internal accounting controls" means a system sufficient to provide reasonable assurances that transactions are recorded as necessary to prepare financial statements that conform to generally accepted accounting principles and to account for assets.[56]

---

[56] *Id.*

<u>COURT'S INSTRUCTION NO.</u>

**Falsification of Books and Records – Rule 13b2-1**

Plaintiff SEC claims that Pardo, Peden and Martin each individually violated Exchange Act Rule 13b2-1.  In order for you to find that any of these defendants violated Rule 13b2-1, you must find by a preponderance of the evidence that the defendant directly or indirectly falsified or caused to be falsified any book, record or account that, in reasonable detail, accurately and fairly reflects the transactions and dispositions of the assets of LPHI.

There is no requirement that the SEC prove that the falsification was material.

There is also no requirement that the SEC prove that Pardo, Peden, or Martin acted knowingly.  Any falsification of the books, records, or accounts made or caused by any of these defendants, so long as he acted unreasonably, will be enough for you to find that he has violated Rule 13b2-1.[57]

I have previously instructed you regarding Defendants' possible reliance on the advice of accountants or experts. This instruction applies to the question of reasonableness.

Finally, the SEC need not show that Pardo, Peden or Martin personally falsified a book, record, or account.  It is enough that one or all of them caused or directed others to do so, or otherwise knew the substance of the entries and failed to correct them.[58]

---

[57] *SEC v. Das,* 723 F.3d 943, 954 (8th Cir. 2013); *McConville v. SEC,* 465 F.3d 780, 789 (7th Cir. 2006); *SEC v. McNulty,* 137 F.3d 732, 741 (2d Cir. 1998) ("Congress amended Section 13(b) to provide that knowing falsification is required before criminal liability shall be imposed, plainly implying that falsification of the information to be filed in accordance with Section 13(b) need not be knowing in order to lead to civil liability." (internal citations and quotation marks omitted).

[58] Section 13(b)(2)(A) of the Securities Act of 1934, 15 U.S.C. § 78m(b)(2)(A); Section 3(a)(37) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(37) (defining "records"); Exchange Act Rule 13b2-1;  *SEC v. Softpoint, Inc.,* 958 F. Supp. 846, 865-66 (S.D.N.Y. 1997) ("there is no scienter requirement [under Rule 13b2-1]; liability is predicated on 'standards of reasonableness.'"); *United States v. Crop Growers Corp.,* 954 F. Supp. 335, 357 (D.D.C. 1997) (financial statements are books and records); Federal Register Release of Final Rules, 1979 SEC LEXIS 2141 * 30 (February 15, 1979) (Rule 13b2-1 does not require scienter).

**COURT'S INSTRUCTION NO.__**

**Rule 13b2-2 of the Exchange Act – Misleading Auditors**

Plaintiff SEC claims that Defendants Pardo, Peden and Martin each violated SEC Rule 13b2-2 by making false or misleading statements or omissions to LPHI's accountants or auditors, Eide Bailly LLP (formerly Murrell, Hall, McIntosh & Co, PLLP) and Ernst & Young LLP.  To prevail on this claim, the SEC must prove by a preponderance of the evidence with respect to Pardo, Peden, and Martin individually, that they directly or indirectly:

1.        Made or caused to be made a materially false or misleading statement, or

2.        Omitted, or caused another person to omit, any material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with (i) any audit, review or examination of the financial statements of LPHI required to be made pursuant to the rules and regulations of the Exchange Act, or (ii) the preparation or filing of any document or report required to be filed with the Commission.

I have previously instructed you on what "material" means.  It has the same meaning here.

The SEC is also not required to show that Pardo, Peden or Martin acted knowingly or recklessly in making the false or misleading statement or omission to the accountant or auditor.[59]

---

[59] Rule 13b2-2, 17 C.F.R. § 240.13b2-2.  Federal Register Release of Final Rules, 1979 SEC LEXIS *38 (February 15, 1979) (no scienter required for violation of Rule 13b2-2).

**COURT'S INSTRUCTION NO. ___**

**Rule 13a-14 – FALSE CERTIFICATIONS**

The SEC alleges that Pardo and Martin each falsely certified that certain reports of LPHI did not contain any untrue statements of material fact or omissions of material fact needed to make what was contained in those reports not misleading in violation of Section 13(a) of the Exchange Act and Rule 13a-14.  In order to prevail on its claim that the defendants violated Section 13(a) and Rule 13a-14, the SEC must prove each of the following elements by a preponderance of the evidence:

> **First:** That Defendants Pardo and Martin signed a certification included in a report filed by LPHI with the SEC;filing by LPHI  certifying that the report fully complied with the requirements of the Exchange Act and fairly presented, in all material respects, the financial condition and results of the operations of the company.

> **Second:** That the report LPHI filed with the SEC that Defendants Pardo and Martin signed contained untrue statements of material fact or omitted a material fact necessary to make the report, in light of the circumstances, not misleading.

> **Third:** That Pardo or Martin knew of the misrepresentation or omission when he certified the report.

I have previously instructed you on what "material" means.  It has the same meaning here.

I have previously instructed you on what knowledge and reliance on the advice of accountants and experts means.  Those have the same meaning here.

**Defendants' Proposed Jury Instructions** – Page 32

**COURT'S INSTRUCTION NO.**

**Jury Not to Consider Relief**

    **[The Parties have submitted an agreed instruction.]**

**COURT'S INSTRUCTION NO. ___**

**DUTY TO DELIBERATE**

**[The Parties have submitted an agreed instruction.]**

**<u>COURT'S INSTRUCTION NO. ___</u>**

**INSTRUCTIONS ON DELIBERATION**

**[The Parties have submitted an agreed instruction.]**

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | Case No.: 1:12-cv-00033-JRN |
| **LIFE PARTNERS HOLDINGS, INC., BRIAN** | § | |
| **PARDO, R. SCOTT PEDEN, and** | § | |
| **DAVID M. MARTIN** | § | |
| | § | |
| **Defendants.** | § | |

_____

**<u>DEFENDANTS' PROPOSED VERDICT FORM</u>**

**<u>Question No. 1</u> - Section 10(b) and Rule 10b-5 – Securities Fraud**

Did the SEC prove by a preponderance of the evidence that Defendants Life Partners

Holdings, Inc., Brian D. Pardo, R. Scott Peden, and David Martin violated Section 10(b) of the

Securities Exchange Act of 1934 and Rule 10b-5?  (See pages _____ of the jury charge provided

by the judge).

Answer "Yes" or "No" as to each Defendant.

Life Partners Holdings, Inc.:  _____

Brian D. Pardo:        _____

R. Scott Peden:        _____

David M. Martin:      _____

*If you answered "No" as to Defendant Life Partners Holdings, Inc. to Question No. 1, do not answer Question No. 2 and proceed directly to Question No. 3. If you answered "Yes" as to Defendant Life Partners Holdings, Inc. to Question No. 1, please proceed to Question No. 2.*

## <u>Question No. 2</u> - Aiding and Abetting Violations of Section 10(b) and Rule 10b-5

Did the SEC prove by a preponderance of the evidence that DefendantsBrian D. Pardo,

R. Scott Peden, and David Martin aided and abetted Defendant Life Partners Holdings, Inc.'s

violations of Section 10(b) of the Securities Exchange Act of 1934 and Rules 10b-5? (See pages

_____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:          _____

R. Scott Peden:          _____

David M. Martin:          _____


## <u>Question No. 3</u> - Section 10(b) and Rule 10b-5 – Insider Trading

Did the SEC prove by a preponderance of the evidence that Defendants Brian D. Pardo

and R. Scott Peden violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-

5 by engaging in insider trading? (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:          _____

R. Scott Peden:          _____

**Question No. 4 - Section 17(a)(1) – Securities Fraud**

Did the SEC prove by a preponderance of the evidence that Defendants Life Partners

Holdings, Inc., Brian D. Pardo, and R. Scott Peden violated Section 17(a)(1) of the Securities

Act of 1933?  (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Life Partners Holdings, Inc.:  _____

Brian D. Pardo:          _____

R. Scott Peden:          _____


**Question No. 5 - Section 13(a) and Rules 12b-20, 13a-1, and 13a-13**

Did the SEC prove by a preponderance of the evidence that Defendant Life Partners

Holdings, Inc. violated Section 13(a) of the Securities Exchange Act of 1934 and Rules 12b-20,

13a-1, and 13a-13?  (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Life Partners Holdings, Inc.:  _____

*If you answered "No" as to Defendant Life Partners Holdings, Inc. to Question No. 5, do not answer Question No. 6 and proceed directly to Question No. 7.  If you answered "Yes" as to Defendant Life Partners Holdings, Inc. to Question No. 5, please proceed to Question No. 6.*

**Question No. 6 – Aiding and Abetting Violations of Section 13(a) and Rules 12b-20, 13a-1, and 13a-13**

Did the SEC prove by a preponderance of the evidence that Defendants Brian D. Pardo, R. Scott Peden, and David Martin aided and abetted Defendant Life Partners Holdings, Inc.'s violations of Section 13(a) of the Securities Exchange Act of 1934 and Rules 12b-20, 13a-1, and 13a-13?  (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:          _____

R. Scott Peden:          _____

David M. Martin:        _____


**Question No. 7 – Sections 13(b)(2)(A) and 13(b)(2)(B) – Books and Records**

Did the SEC prove by a preponderance of the evidence that Defendant Life Partners Holdings, Inc. violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 and Rules 12b-20, 13a-1, and 13a-13?  (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Life Partners Holdings, Inc.:  _____

*If you answered "No" as to Defendant Life Partners Holdings, Inc. to Question No. 7, do not answer Question No. 8 and proceed directly to Question No. 9. If you answered "Yes" as to Defendant Life Partners Holdings, Inc. to Question No. 7, please proceed to Question No. 8.*

**<u>Question No. 8</u> – Aiding and Abetting Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) – Books and Records**

Did the SEC prove by a preponderance of the evidence that Defendants Brian D. Pardo,

R. Scott Peden, and David Martin aided and abetted Defendant Life Partners Holdings, Inc.'s

violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934? (See

pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:          _____

R. Scott Peden:          _____

David M. Martin:         _____


**<u>Question No. 9</u> – Section 13(b)(5) and Rule 13b2-1 – Books and Records**

Did the SEC prove by a preponderance of the evidence that Defendants Brian D. Pardo,

R. Scott Peden, and David Martin violated Section 13(b)(5) of the Securities Exchange Act of

1934 and Rule 13b2-1? (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:          _____

R. Scott Peden:          _____

David M. Martin:         _____

**<u>Question No. 10</u> – Rule 13b2-1 – Books and Records**

Did the SEC prove by a preponderance of the evidence that Defendants Brian D. Pardo, R. Scott Peden, and David Martin violated Section 13(b)(5) of the Securities Exchange Act of 1934 and Rule 13b2-1?  (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:          _____

R. Scott Peden:          _____

David M. Martin:        _____

**<u>Question No. 11</u> –Rule 13b2-2 – Misleading Auditors**

Did the SEC prove by a preponderance of the evidence that Defendants Brian D. Pardo, R. Scott Peden, and David Martin violated Rule 13b2-2?  (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:          _____

R. Scott Peden:          _____

David M. Martin:        _____

**Question No. 12** –**Rule 13a-14 – False Certifications**

Did the SEC prove by a preponderance of the evidence that Defendants Brian D. Pardo and David M. Martin violated Rule 13a-14?  (See pages _____ of the jury charge provided by the judge).

Answer "Yes" or "No" as to each Defendant.

Brian D. Pardo:        _____

David M. Martin:      _____

SO SAY WE ALL, this _____ day of February, 2014.

_____
Signature of Foreperson