# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | § | |
| **COMMISSION** | § | |
| | § | |
| **V.** | § | **A-12-CV-00033 RP** |
| | § | |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| **BRIAN PARDO, R. SCOTT PEDEN** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Security and Exchange Commission's Motion to Enter Judgment on Remand and Brief in Support (Dkt. No. 417); Defendant R. Scott Peden's Response (Dkt. No. 419); Defendant Brian D. Pardo's Response (Dkt. No. 420); the Security and Exchange Commission's Replies (Dkt. Nos. 423 and 424); and Pardo's Sur-Reply (Dkt. No. 426). The District Court referred the above-motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Having reviewed the parties' filings, the entire case file, and the applicable law, the Court enters the following Report and Recommendation.

## I.  GENERAL BACKGROUND

This securities fraud case is before the Court after remand by the Fifth Circuit. The Honorable James R. Nowlin presided over a jury trial in this case commencing January 29, 2014. Life Partners Holdings, Inc. (LPHI) was in the business of facilitating the sales of life insurance policies to investors in the secondary market, commonly referred to as life settlements. LPHI, a publicly-held company, derived its income from the fees earned on these life settlement transactions. The Securities and

Exchange Commission alleged that LPHI knew that its life expectancy estimates for the insureds (whose policies were being sold) were materially short, that life expectancy estimates were of "critical importance in determining the policy's sale price" (854 F.3d at 773), and that LPHI should have disclosed this knowledge in public filings as a known problem rather than an unmaterialized contingent risk.

At trial, the SEC alleged, and the jury ultimately found, that Brian Pardo, Scott Peden, and Life Partners Holdings, Inc., violated Section 17(a) of the Securities Act of 1933. The jury also found that LPHI, aided and abetted by Pardo and Peden, violated Section 13(a) of the Securities and Exchange Act of 1934 and Rules 12b-20, 13a-1, and 13a-13 thereunder. In addition, the jury found that Pardo violated Exchange Act Rule 13a-14 by knowingly certifying false public reports that LPHI filed with the SEC during that period. After trial, the Court set aside the jury's 17(a) verdicts and also declined to order reimbursement under Section 304 of the Sarbanes-Oxley Act of 2002. Nevertheless, the Court ordered disgorgement and civil penalties against the company and ordered Pardo and Peden to pay second-tier civil penalties of $6,161,843 and $2,000,000, respectively. The Court also enjoined all defendants from violating or aiding and abetting violations of Section 13(a) of the Exchange Act. *SEC v. Life Partners Holdings, Inc.*, 71 F.Supp.3d 615 (W.D. Tex. 2014).

On cross-appeals, the Fifth Circuit Court of Appeals upheld the verdicts and judgments against Pardo and Peden, reinstated the jury's verdict finding that Pardo and Peden violated Section 17(a), vacated the civil penalty orders, and reversed the Court's ruling denying the SEC's request for reimbursement under SOX 304. The Fifth Circuit remanded this matter for reassessment of the civil penalty amounts against Pardo and Peden, for determination of the SOX 304 reimbursement owed by Pardo, and for determination of the remedy appropriate for the violation of Section 17(a). *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765 (5th Cir. 2017).

On remand, the SEC requests an order from the Court: (1) permanently enjoining Defendants from future violations of all relevant securities laws; effectively adding Section 17(a) to the standing injunctions; (2) requiring Defendants to disgorge their ill-gotten gains received as a result of their fraud; (3) requiring each Defendant to pay civil penalties commensurate with their violations; and (4) requiring Pardo to reimburse LPHI $13,340,371 in accordance with SOX 304. Pardo and Peden dispute the SEC's requested relief, asserting that the imposition and/or the amount of the requested penalties are inappropriate.

## II. ANALYSIS

### A. *Permanent Injunction Pursuant to Section 17(a) of the Securities Act*

At trial, the jury found that Peden and Pardo violated section 17(a) of the Securities Act of 1933, along with section 13(a) of the Securities Exchange Act of 1934. The District Court set aside the verdict as to section 17(a), and entered a final judgment enjoining the Defendants from committing further violations of section 13(a). On appeal, the Fifth Circuit reinstated the jury's finding that Defendants violated section 17(a), and remanded the case for the Court to "provide appropriate remedy for the appellant's section 17(a) violations consistent with this opinion." *Id.* at 789. Based upon the Fifth Circuit's reinstatement of the jury's fraud finding under section 17(a), the SEC requests that the Court enter an order permanently enjoining Defendants' conduct under this statute as well as section 13(a). Defendants oppose the request.

Section 21(d) of the Exchange Act allows for the entry of permanent injunctions in enforcement actions brought by the SEC when the evidence establishes a "reasonable likelihood" that a Defendant will engage in future violation of the securities laws. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1); *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981). "[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances,

3

betoken a 'reasonable likelihood' of future transgressions." *Zale Corp.*, 650 F.2d at 720; *see SEC v. Caterinicchia*, 613 F.2d 102 (5th Cir.1980); *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978). In predicting the likelihood of future violations, courts evaluate the totality of the circumstances. *Zale Corp.*, 650 F.2d at 720. In imposing a permanent injunction, courts consider a number of factors, including: the (1) egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) the degree of scienter; (4) sincerity of defendant's recognition of his transgression; and (5) likelihood of the defendant's job providing opportunities for future violations. *SEC v. Gann,* 565 F.3d 932, 940 (5th Cir. 2009) (citing *SEC v. Blatt*, 583 F.2d 1325, 1334 n. 29 (5th Cir. 1978)).

The SEC asserts that, applying these factors, the District Court and the Fifth Circuit found it proper to enter permanent injunctions against the Defendants enjoining further violations of Section 13(a). The SEC argues that the Court's findings supporting the Section 13(a) injunction equally support a Section 17(a) permanent injunction. *See* Dkt. No. 417 at 3-8 (citing trial evidence in support of various *Gann* factors).

## 1. Pardo

Pardo argues that the Fifth Circuit's holding on the Section 17(a) claim, reversing Judge Nowlin's JMOL on the jury's Section 17(a) verdict, was based in part on its recognition that no scienter was required for a Section 17(a)(2) or (3) violation. Pardo asserts that the Fifth Circuit based its reversal of the Section 17(a) JMOL on the finding that there was sufficient evidence in the record to support that Defendants "negligently represented the risk of underestimated life estimates in its January 2007 quarterly report." *Id.* at 786. Pardo, relying on *SEC v. Blatt*, 583 F.2d 1325, 1333 (5th Cir. 1978), argues that the SEC must prove scienter in order to obtain a permanent injunction. *Blatt* states that, "to justify an injunction on the basis of past violations the Commission must prove that the defendant possessed scienter, defined by the Supreme Court as 'a mental state embracing intent to deceive,

manipulate, or defraud.'" *Id.* (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). Because, Pardo argues, the Fifth Circuit's reversal of the District Court was based upon a single, negligence-based violation of the statute, it is insufficient to support the imposition of a permanent injunction as to Section 17(a).

The SEC responds that scienter is merely one factor the Court must consider in determining whether to impose a Section 17(a) injunction. It quotes from the Fifth Circuit's decision in *ZaleCorp* that "it is not a single factor, but rather the sum of the circumstances surrounding the defendant and his past conduct that governs whether to grant or deny injunctive relief." *ZaleCorp.*, 650 F.2d at 720. Additionally, the SEC argues that the District Court set aside the Section 17(a) jury verdict for lack of evidence within the proper time period, and not because of a lack of scienter. Judge Nowlin stated:

> The Court did not set aside the jury's Section 17 verdict aside [sic] on account of a lack of evidence that Defendants had committed securities fraud. Instead, the Court was forced to set the jury's finding aside because the Commission had limited its allegations to a very specific period of time and the evidence the SEC presented did not support a finding that Defendants had committed securities fraud during the specific time alleged. The record did indeed contain evidence that Defendants knowingly or at least recklessly violated the securities laws of this nation.

71 F.Supp.3d at 626 n.1.; Dkt. No. 304 at 4 n.1.

The Court finds that scienter is indeed just one factor to be considered in assessing whether a permanent injunction is appropriate under Section 17(a). The language in the *Blatt* case, upon which Pardo relies, is not determinative. In a later case, regarding another set of factors similar to those set forth in *Gann* and *Blatt* used to determine the propriety of injunctive relief, the Fifth Circuit stated, "when analyzing a case, lists of factors such as in [ ] generally are not exclusive, nor is each factor always relevant. Circumstances can alter what facts should be evaluated. Factors are meant to guide courts as they consider evidence in a case and form remedies.*" SEC v. Kahlon*, 873 F.3d 500, 507 (5th Cir. 2017). Therefore, scienter is just one factor to be considered in determining whether to impose a

Section 17(a) injunction. *See SEC v. Kahlon*, 2016 WL 5661642 (E.D. Tex. Sept. 30, 2016) (citing *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (citations omitted) ("while scienter is an important factor in this analysis, it is not a prerequisite to injunctive relief.").

In determining whether to impose a Section 17(a) injunction, the SEC argues that the Court may rely on the same facts buttressing Judge Nowlin's imposition of a Section 13(a) injunction. Pardo argues that a single Section 17(a) violation based upon a negligent misrepresentation under 17(a)(2) or (3) is insufficient to support a Section 17(a) injunction. Pardo's argument is based upon the Fifth Circuit's finding that the January 2007 quarterly report was sufficient evidence to support the jury's verdict on Section 17(a), which he asserts is the only basis for the imposition of a Section 17(a) injunction.

Pardo is incorrect. Having found that Pardo violated the securities laws, the Court need only decide whether there is a reasonable likelihood of future violations, and assessing this likelihood allows the Court to take all circumstances and violations into account. *See SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at *4 (N.D. Tex. Apr. 5, 2012). The Court may consider all evidence presented at trial, including the evidence supporting the Section 13(a) permanent injunction, in considering whether to impose a Section 17(a) permanent injunction.

### 2. Peden

Peden argues that the SEC's request for a Section 17(a) injunction lacks evidentiary support. Peden asserts that the Court must conduct an evidentiary hearing to assess the various *Gann* factors before implementing an injunction. He argues that the SEC presented no evidence at trial establishing a reasonable likelihood that Peden will violate the relevant securities laws in the future. Peden asserts that no jury finding exists supporting a finding of fraud against him, and asks the Court to make a

specific ruling that there was no finding of fraud against him. He also argues that the injunction proposed by the SEC is an impermissible "obey the law" injunction.

With regard to Peden's argument that there was no "fraud" finding against him, it is without merit. Securities Act § 17(a) makes it:

> unlawful for any person in the offer or sale of any securities[,] ...by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
>> (1) to employ any device, scheme, or artifice to defraud, or
>>
>> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>>
>> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). The Fifth Circuit upheld the Section 17(a) jury verdict stating,

> Thus, the jury properly could have found that the appellants committed violations of section 17(a)(2) or 17(a)(3). Consequently, we conclude that the jury's verdict is supported by substantial evidence. The record shows: well before 2007, the appellants knew that they had a problem with viatical LEs; LPHI had the ability to easily assess the accuracy of its LEs; Piper offered to "grade" Cassidy's LEs, but Pardo instructed her not to do so; and Rubin testified that by 2007 it was "becoming clear" that LPHI had a problem with its life-settlement LEs. This is more than a scintilla of evidence that the appellants negligently misrepresented the risk of underestimated LEs in its January 2007 quarterly report, which incorporated LPHI's prior annual report.

*SEC v. Life Partners Holdings, Inc.*, 854 at 786. Sections 17(a)(2) or 17(a)(3) clearly contemplate and include fraud. Additionally, Judge Nowlin stated, "the Court did not set [ ] the jury's Section 17 verdict aside on account of a lack of evidence that Defendants had committed securities fraud." 71 F.Supp.3d at 626 n.1.; Dkt. No. 304 at 4 n.1. The record and evidence supports that Peden committed fraud.

As to the SEC's requested Section 17(a) injunction qualifying as an "obey the law" injunction, this claim is also without merit. As addressed by the Fifth Circuit, "injunctions are problematic when

they order a defendant to obey the law but do not simultaneously indicate what law the defendant needs to obey. They are not problematic when they order a defendant to obey a specific law." *Life Partners*, 854 F.3d at 785 (citing *In re Rodriguez*, 695 F.3d 360, 369 (5th Cir. 2012)). "The district court's injunctions in this case ordered the appellants to obey section 13(a) by refraining from specified conduct. Accordingly, we affirm the district court's injunctions." *Id.* The Court is mindful that any injunction it enters must be as specific as its prior Section 13(a) injunction.

The Court finds that Peden's argument that the SEC's request for a Section 17(a) injunction lacks evidentiary support is without merit.

### 3. Application of the *Gann* Factors/Evidentiary Basis for Section 17(a) Permanent Injunction[1]

The commission of past illegal conduct is highly suggestive of the likelihood of future violations. *See SEC v. Cavanagh*, 2004 WL 1594818, at *28 (S.D.N.Y. 2004). The Fifth Circuit upheld the District Court's analysis of the propriety of a Section 13(a) permanent injunction. *See S.E.C. v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017). The District Court's analysis applies equally to a Section 17(a) permanent injunction as it is part of the totality of Defendants' egregious conduct.

Applying the *Gann* factors in imposing a Section(a) 13 permanent injunction, the District Court determined that Defendants' conduct was egregious, and was recurrent in that Defendants caused LPHI to file multiple misleading reports over many years. *S.E.C. v. Life Partners Holdings, Inc.*, 71 F.Supp.3d 615, 618-20 (W.D. Tex. 2014). This Court adds to that long list of misleading reports the January 2007 quarterly report which the Fifth Circuit found supports the Section 17(a) jury verdict, as it includes the

---

[1] Defendants request an evidentiary hearing for the Court's analysis of the *Gann* factors. The Court finds that the evidence presented at trial is adequate for this purpose.

8

same kind of misleading information that supported the Section 13(a) violations. The District Court additionally noted that "the record contains a great deal of evidence that Defendants understood that Life Partners may not have been complying with the company's legal obligations. Nevertheless, the evidence suggests that Defendants resisted any change in course." *Id.* at 619. Furthermore, the District Court considered that Defendants did not seem to recognize the severity of their transgressions as they did not change their business practices. *Id.* In 1991 Pardo settled a case against him brought by the SEC, and in doing so agreed to a permanent injunction prohibiting him from violating Section 13(a) of the Exchange Act. In 2007, LPHI settled a suit filed by Colorado securities regulators asserting that Defendants' use of short LE's violated Colorado securities laws and ousted Life Partners from the Colorado market. *Id.* Despite this, Defendants did not change their business practices going forward. The District Court found this evidence sufficient to show a "reasonable likelihood" of future transgressions supportive of a Section 13(a) permanent injunction. *Id.* at 620. This Court also relies on the same evidence in finding that a "reasonable likelihood" of future transgressions exists sufficient to support a Section 17(a) permanent injunction.

Additionally, in its Motion, the SEC cites to a litany of record evidence supporting the "reasonable likelihood" of future transgressions and the propriety of the imposition of a permanent injunction. The Court finds this evidence additionally supports the imposition of a Section 17(a) permanent injunction. First, the evidence in the record supports the egregiousness of Defendants' conduct. Exs. G-26-G-30, G-46-G-58, G-371E-G371-V, Dkt. No. 263 at 65, 156; Dkt. No 262 at 41-45, 168-69, Dkt. No. 264 at 63,10, Dkt. No. 265 at 59. Second, the evidence presented at trial supports that the violations were recurrent and not isolated. Exs. G-26-G-30, G-46-G-58, G-371E-G371-V, Dkt. No. 64 at 59,63. While neither the Fifth Circuit nor the District Court made a finding of scienter (although

the District Court did not specifically exclude the existence of scienter),[2] the evidence at trial supports

a finding that Defendants knowingly or at least recklessly violated securities laws.[3] Exs. G-85, G-101,

G-107, G-134,G-137, G-141, G-143, G-180, G-195, G-381. With regard to the Defendants' sincere

recognition of their transgressions, the evidence also supports that Defendants have not admitted their

wrongdoing or acknowledged their actions were harmful, before or during the instigation of the case

by the Commission. Dkt. 262 at 42-43, 48, 112-23,136, Ex. G-195, Dkt. 265 at 15, Dkt. No. 293-2 at

5; Dkt. 263 at 22-23. Additionally, the record evidence shows that the likelihood of recidivism is high

for both Pardo and Peden. Their past conduct alone supports such a finding. Exs. G-26-G-30, G-46-G-

58, G-371E-G371-V, Dkt. No. 263 at 65, 156; Dkt. No 262 at 41-45, 168-69, Dkt. No. 264 at 63,10,

Dkt. No. 265 at 59.

The Court finds that this evidence supports imposition of a Section 17(a) permanent injunction.

In light of the Defendants' conduct in this case and the factors set forth in *Gann*, a permanent injunction

as to Pardo and Peden is necessary to protect the public from future securities violations under 17(a).

## B. *Disgorgement of Ill-Gotten Gains*

The SEC asserts that, in light of the Fifth Circuit's reinstatement of the Section 17(a) verdict,

the District Court must consider whether that verdict warrants an order of disgorgement against Pardo

and Peden. The SEC moves for disgorgement for the five year limitation period, from 2007-2011, in

---

[2]The District Court stated "the record did indeed include evidence that Defendants knowingly–or at least recklessly–violated the securities laws of this nation. 71 F.Supp.3d at 626 n.1. To establish scienter, a plaintiff must show the defendant intended to deceive, defraud, or manipulate, or that the defendant acted with severe recklessness. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009). Severe recklessness is limited to "highly unreasonable omissions or misrepresentations" involving an "extreme departure from the standards of ordinary care." *Nathenson v. Zonagen, Inc.*, 267 F0.3d 400, 408 (5th Cir. 2001).

[3]The Court notes that even without any finding of scienter, the facts presented at trial support the imposition to a Section 17(a) permanent injunction.

the amount of $2,553,029 in salary for Pardo, $1,586,720 in bonus for Pardo, $777,087 in salary for Peden, and $1,596,532 in bonus for Peden. Dkt. No. 417 at 11. Judge Nowlin declined to order disgorgement for Defendants' Section 13 violations.

Defendants oppose the disgorgement. Pardo argues that there is no fraud upon which the SEC can base its disgorgement argument. Pardo maintains that because the Fifth Circuit's finding was based upon its conclusion that the jury's Section 17(a) verdict was supported by the evidence, only because no scienter was required for 17(a)(2) and (3) violations. Citing *Kokesh v. SEC*, — U.S. — , 137 S.Ct. 1635, 1643-144 (2017), Pardo argues that disgorgement is punitive rather than compensatory; and that therefore, scienter is a prerequisite to imposing a disgorgement remedy. Dkt. No. 420 at 13. Pardo additionally asserts that the Fifth Circuit's finding that Pardo and Peden violation Section 17(a), based upon a single negligent misrepresentation in the January 2007 10-Q, is insufficient to base disgorgement of compensation and bonuses from 2007 to 2011. He asserts there is no causal relation to the Section 17(a) violation, and that the SEC has failed to carry its evidentiary burden.

Peden asserts that, in seeking an order of disgorgement, the SEC must present evidence supporting the amount of ill-gotten gains it requests be disgorged. Peden argues that the SEC has failed to present evidence connecting the amount sought to be disgorged with the claimed violations. Peden also argues that the SEC could have sued other officeers and directors, because if Peden's salary and bonus qualify as ill-gotten gains, those individuals do as well.

"The district court has broad discretion not only in determining whether to order disgorgement but also in calculating the amount to be disgorged." *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). The purpose of disgorgement "is to deprive the party or parties responsible for the fraud of their gains and to deter future violations of the law." *SEC v. Helms*, 2015 WL 5010298, at *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)). In actions brought by the SEC

involving a securities violation, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)). The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation. *First City*, 890 F.2d at 1232; *SEC v. Rockwall Energy of Tex., LLC*, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012). Once the SEC meets its burden, the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *First City*, 890 F.2d at 1232.

The Court agrees with Pardo and Peden that the SEC has failed to carry its initial evidentiary burden with regard to the requested disgorgement. The SEC has failed to establish that the amount requested as disgorgement are profits "causally connected to the violation." *Allstate,* 501 F.3d at 413. Although the Court recognizes "the disgorgement figure should include all gains flowing from the illegal activities" and does not have to be exact, the Court is unable to ascertain the profits the Defendants received from the conduct at issue. *SEC v. Huff*, 758 F. Supp. 2d 1288, 1356 (S.D. Fla. 2010). The SEC has merely identified the salaries and bonuses paid to Pardo and Peden during the five year limitations period. While the impact of uncertainty regarding the disgorgement amount should usually fall on the wrongdoer, in this case, any order of disgorgement would be less an approximation and basically be speculative. "[T]he SEC cannot satisfy its burden to reasonably approximate a disgorgement amount merely by proving the violations" by simply stating the salaries and bonuses Pardo and Peden received from the transactions were all profits; "[w]ithout proof, a court cannot speculate[.]" *SEC v. Wyly*, 56 F. Supp. 3d 260, 269 (S.D.N.Y. 2014) (emphasis in original).

The Court finds that the SEC has presented insufficient proof that Pardo and Peden's entire salaries and bonuses flowed from illegal activities. Because the SEC has failed to bear its initial

burden and establish that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation, the Court declines to recommend disgorgement against Pardo and Peden.

## C. *Civil Penalties under Section 17(a)*

The SEC "asks the Court to order Pardo and Peden to pay a third-tier civil penalty in an mount it deems appropriate." Dkt. No. 417 at 19. Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize the Court to assess civil penalties. 15 U.S.C. §§ 77t(d), 78u(d). Such penalties "are designed to serve as deterrents against securities law violations, in contrast with disgorgement, which primarily aims to remove a defendant's profit from illegal transactions and which merely places the offender in the same position he would have been had he not committed the offense." *SEC v. Helms*, 2015 WL 5010298, at *21 (W.D. Tex. Aug. 21, 2015) (citation omitted).

There are three tiers of penalties, each with a different required showing. All violations are subject to first-tier penalties. 15 U.S.C. §§ 77t(d), 78u(d). Second-tier penalties are warranted when violations involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* Third-tier penalties are appropriate for violations that involve fraud and "result[ ] in substantial losses or create[ ] a significant risk of substantial losses to other persons." *Id.* Because Pardo and Peden's Section 17(a) violation occurred in 2007, the maximum penalty is $6,500 per violation for a first-tier penalty, $65,000 per violation for a second-tier penalty, and $130,000 per violation for a third-tier penalty. 17 C.F.R. § 201.1005. The maximum penalty the Court may award is the greater of the gross amount of pecuniary gain or the amount set by statute, i.e., set by the applicable tier. 15 U.S.C. §§ 77t(d), 78u(d)(3).

While the maximum penalty is determined by statute, the amount imposed is left to the Court's discretion. *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005). In determining the amount, courts consider

the same factors used to analyze the appropriateness of injunctive relief. *See SEC v. Coplan*, 2014 WL 695393 at *9 (S.D. Fla. Feb. 24, 2014) ("Because civil penalties, like a permanent injunction, are imposed in part to deter the wrongdoer from similar conduct in the future, courts apply the same factors for determining injunctive relief in assessing civil penalties.") (internal quotation marks omitted) (quoting *SEC v. Gane*, 2005 WL 90154, at *20 (S.D. Fla. Jan. 4, 2005)); *see SEC v. Offill*, 2012 WL 1138622, at *3 (N.D. Tex. Apr. 5, 2012) (noting that in determining civil penalties, a court considers the following factors: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition).

Based upon the above-factors and based upon the reasons stated in the above-sections, the Court finds it appropriate to impose third-tier penalties against Pardo and Peden in this case. Because the Court has already awarded significant penalties in this case, the Court finds that a penalty of $130,000 against Pardo and Peden is appropriate for the Section 17(a) violations.

### D. Recalculation of Pardo and Peden's Section 13(a) Penalties

Based upon the jury's verdict on Pardo and Peden's aiding and abetting of LPH's violation of Section 13(a) and rules thereunder, the District Court assessed second-tier civil penalties of $6,161,843 against Pardo and $2,000,000 against Peden, finding that their conduct was, at the very least, reckless. On appeal, Pardo and Peden argued that the District Court erred in imposing second-tier penalties because the jury verdict did not establish any "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" on their part, as the statute requires. 15 U.S.C. § 78u(d)(3)(B)(ii).

The Fifth Circuit disagreed and affirmed the District Court's imposition of second-tier penalties under Section 13(a) reasoning the following:

> Rather than conflict with the jury's verdict, however, the district court's finding of recklessness was required by it. As we noted above, to find that the appellants aided and abetted LPHI's violations of section 13(a), the jury had to find that they had knowledge of LPHI's violation and of their role in furthering it. And, as previously explained, the SEC's theory at trial was that LPHI violated section 13(a) by misrepresenting the known fact that its LEs were short as a contingent risk. The appellants were LPHI's top officers and the ones who created, signed, and certified filings containing the relevant misrepresentations. If the appellants had knowledge of LPHI's violations and of their role in furthering them, as the jury found, they also necessarily exhibited "deliberate or reckless disregard of a regulatory requirement."

*Life Partners*, 854 F.3d at 782 (internal citations omitted).

In assessing the amount of the civil penalties, the District Court determined that Pardo was responsible for sixty-eight individual violations and that Peden was responsible for eighty-five violations. The District Court reached these numbers by multiplying the number of statutory and regulatory provisions the appellants had violated by the number of LPHI's false filings with the SEC. The Fifth Circuit rejected all of Pardo and Peden's challenges to the District Court's Section 13(a) calculations on appeal. *See Id.* at 782-83. However, the SEC conceded on appeal that "section 13(a) cannot serve as the basis for an independent violation in this case," and that "the district court's calculation was flawed because it included purported violations of Rule 13a–1, which pertains to Form 10–Ks, in connection with Form 10–Qs and purported violations of Rule 13a–13, which pertains to Form 10–Qs, in connection with Form 10–Ks." *Id.* at 783. In light of these concessions by the SEC, the Fifth Circuit vacated the District Court's assessment of civil penalties against Pardo and Peden and remanded the case "for recalculation of the number of violations without the flaws conceded by the SEC and for reassessment of the amounts of civil penalties imposed on the appellants." *Id.* Accordingly, the Court must now recalculate those civil penalties.

With regard to Pardo, the SEC initially proposed, and the District Court found, 85 total violations by Pardo. Dkt. No. 293 at 18 n.14; Dkt. 304 at 15. This proposed calculation was based on 17 separate filings of 10-Q and 10-K reports made from January 16, 2007 through January 10, 2011. *Id.* The SEC had treated each filing as a violation of five different provisions: Exchange Act Section 13(a); Rule 12b-20, Rule 13a-1, Rule 13a-13, and Rule 13a-14. *Id.* However, the evidence shows that each filing violates three provisions, not five. Dkt. No. 417 at p. 17. The evidence shows that LPHI, aided and abetted by Pardo, violated Section 13(a) and Rules 12b-20, 13a-1, and 13a-13, and that Pardo violated Rule 13a-14, each of the 13 Forms 10-Q filed by LPHI between January 16, 2007 and January 10, 2011 violated Rules 12b20, 13a-13, and 13a-14. In addition, each of the four Forms 10-K filed during that period violated Rules 12b-20, 13a-1, and 13a-14. Assuming that each filing represents three violations, Pardo committed 51 violations, and his maximum second-tier civil penalty would be $3,555,000. Dkt. No. 417-B. For the reasons previously stated by the District Court, Dkt. 304 at 14-15, Pardo should pay the maximum civil penalty for his violations of Section 13(a).

With regard to Peden, the District Court initially found 68 violations based on the same LPHI filings. Dkt. 304 at 14. The evidence in the record, however, shows that Peden only committed 34 violations, and that his maximum second-tier civil penalty would be $2,370,000. Dkt. No. 417 at 17; Dkt. No. 417-C. Based upon the District Court's previous finding that it "would not be equitable" to order the maximum penalty, Dkt. 304 at 14, against Peden, the Court finds that Peden should pay the reduced amount of $2,000,000 for the Section 13(a) violations.

## E.      *Reimbursements under Section 304 of SOX*

### 1.      **The Statute**

"Section 304 of the Sarbanes–Oxley Act of 2002 provides for the forfeiture of certain bonuses and profits when corporate officers fail to comply with securities law reporting requirements." *In re*

*Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1229 (9th Cir. 2008).  Section 304(a) provides, in

relevant part, the following:

> If an issuer is required to prepare an accounting restatement due to the material
> noncompliance of the issuer, as a result of misconduct, with any financial reporting
> requirement under the securities laws, the chief executive officer and chief financial
> officer of the issuer shall reimburse the issuer for--
>
> > (1) any bonus or other incentive-based or equity-based compensation
> > received by that person from the issuer during the 12-month period
> > following the first public issuance or filing with the Commission
> > (whichever first occurs) of the financial document embodying such
> > financial reporting requirement; and
> >
> > (2) any profits realized from the sale of securities of the issuer during
> > that 12-month period.

15 U.S.C. § 7243(a) (hereinafter § 304).

Thus, by its express terms, Section 304 "requires CEOs and CFOs to reimburse their company

for any bonus or similar compensation, or any profits realized from the sale of company stock, for the

12-month period following a false financial report, if the company 'is required to prepare an accounting

restatement due to the material noncompliance of the [company], as a result of misconduct.'" *Cohen

v. Viray*, 622 F.3d 188, 193 (2nd Cir. 2010) (quoting 15 U.S.C. § 7243(a)).  Congress enacted SOX

"[a]fter a series of celebrated accounting debacles," *Free Enter. Fund v. Pub. Co. Accounting Oversight

Bd.*, 561 U.S. 477, 484 (2010), and it is "a major piece of legislation bundling together a large number

of diverse and independent statutes, all designed to improve the quality of and transparency in financial

reporting and auditing of public companies." *Carnero v. Boston Sci. Corp.*, 433 F.3d 1, 9 (1st Cir.),

*cert. denied*, 548 U.S. 906 (2006).  Notably, Section 304 does not create a private right of action and

"only the SEC has authority to enforce § 304. . . ." *Cohen*, 622 F.3d at 194-195.

## 2.     The Trial and Appellate Rulings on the SEC's Claim Under Section 304

In the SEC's Motion to Enter Judgment filed after the jury trial in this case, the SEC asked the District Court to order Pardo to reimburse LPHI $13,340,371 in certain bonus, incentive and equity-based compensation he received in connection with his employment for the company as required by § 304.  To succeed on its Section 304 claim, the SEC had to demonstrate that: (1) LPHI was required to prepare an accounting restatement due to material non-compliance with financial reporting requirements; (2) that the non-compliance was caused by misconduct within LPHI; and (3) Pardo received bonuses, incentive based or equity based compensation, or profits from sales of LPHI's securities during the twelve month period after the first improper public issuance of the filing.  *SEC v. AgFeed Indus., Inc.*, 2016 WL 10934942, at *25 (M.D. Tenn. July 21, 2016).  Although the SEC alleged in its Amended Complaint that LPHI was "required to prepare accounting restatements for every quarter of fiscal years 2007 and 2010 as well as the first three fiscal quarters of fiscal year 2011," Dkt. No. 67 at 56, the SEC's Motion to Enter Judgment only relied on a restatement filed by LPHI on November 22, 2011, which restated its financial statements for Fiscal Years 2009 and 2010.  Dkt. No. 246-G 31 at 3 ("In this Form 10-K, we are restating our Consolidated Financial Statements for the fiscal years ended February 28, 2010 and 2009 ('*fiscal 2010*' and '*fiscal 2009*' year respectively).").  The SEC has failed to point to any other restatement filed by LPHI in support of their Section 304 claim.

In the 2011 restatement, "LPHI restated its financial statements for fiscal years 2009 and 2010 because its prior quarterly and annual reports did not comply with generally accepted accounting principles (GAAP)."  *Life Partners*, 854 F.3d at 786.  The restatement explained that it had to restate its consolidated financial statements for 2009, 2010, and the first three quarters of 2011, to properly state, inter alia, investment in policies, which "had been incorrectly accounted for under [GAAP].'"  *Id.*  LPHI further stated that its restatement was related, in part, to "impairment expense for owned

18

policies." *Id.* The restatement also contains an explanation of a disagreement between LPHI and Ernst & Young, its auditor, regarding LPHI's revenue recognition policy. *Id.* The restatement further indicates that LPHI accepted Ernst & Young's new position and applied the new revenue recognition policy both prospectively and in restating its prior financial statements. *Id.*

Although the District Court found that "there is no question that LPHI restated its financials due to material non-compliance or that Pardo received incentive based compensation during the relevant period," it also concluded that "there is insufficient evidence that LPHI's restatement was caused by misconduct." Dkt. No. 304 at 17. Specifically, the District Court found that the evidence did not establish that LPHI's noncompliance with financial reporting requirements was caused by misconduct as opposed to "good faith reliance on the mistakes of its external auditor." *Id.* at 18. Accordingly, the District Court ruled that "Pardo is not required to pay anything back under SOX 304." *Id.*

The SEC appealed the District Court's ruling that LPHI's noncompliance was not necessarily caused by misconduct. As the Fifth Circuit noted, there was "no dispute that the remaining elements of section 304(a) were satisfied in this case." *Id.* at 787 n.18. The Fifth Circuit reversed the District Court's ruling. The Fifth Circuit found that that "LPHI's restatements were not required solely because of its good-faith reliance on LPHI's auditor," and that "LLPHI's knowing use of materially underestimated LEs rendered its financial statements noncompliant and thus also required a restatement." *Id.* at 788. The Fifth Circuit explained its reasoning as follows:

> As the language of the statute makes clear, it is not the actual issuance of a restatement that must be caused by misconduct; rather, it is the requirement of a restatement that must be "due to the material noncompliance of the issuer, as a result of misconduct," with financial reporting requirements. 15 U.S.C. § 7243(a). LPHI's actual motivation in issuing the restatement is therefore of no moment.
>
> At any rate, LPHI actually issued a restatement using "improved" methodologies to test for impairments, and this restatement explicitly tied these new methodologies to the changed calculations of impairment on investment in policies. The appellant's

contention that the use of new methodologies—after the SEC had launched its investigation into LPHI's use of materially short LEs—had nothing to do with LPHI's prior knowing use of materially short LEs is highly implausible in light of the record.

*Id.* at 788.

Based upon the foregoing, the Fifth Circuit concluded that there was "no basis in the record on which the district court could conclude that the restatements were not required by LPHI's misconduct in connection with its underestimated LEs; therefore, we conclude that the district court clearly erred in this respect." *Id.* at 789. The Fifth Circuit reversed the District Court's judgment on this issue and remanded it to the District Court to "to determine the appropriate amount of SOX reimbursements." *Id.* Accordingly, this Court must now determine the appropriate amount of reimbursements under Section 304.

### 3. The Appropriate Amount of Reimbursement Under Section 304

As discussed, under "the plain language of the statute," Pardo is required to reimburse LPHI for any bonus or other incentive or equity based compensation during the 12–month period following the filing of each of the reports that had to be restated. *E.C. v. Jasper*, 883 F. Supp. 2d 915, 932 (N.D. Cal. 2010), *amended*, 2010 WL 8898216 (N.D. Cal. Nov. 5, 2010), *aff'd*, 678 F.3d 1116 (9th Cir. 2012). The SEC again asks this Court to order Pardo to reimburse LPHI $13,340,371 for certain bonus, incentive, and equity-based compensation he received in connection with his employment for the company during the time period from January 16, 2007 through November 22, 2011. While LPHI is clearly entitled to be reimbursed under Section 304, the SEC is not relying on the correct time frame to calculate the reimbursements.

As discussed above, the only restatement in the record that the SEC has relied on in this case is the 2011 restatement filed by LPHI, which restated its financial statements for Fiscal Years 2009 and 2010. Dkt. No. 246-G 31. In addition, this was the only restatement the Fifth Circuit relied on in its

decision to reverse and remand the Section 304 issue to the District Court. The Fifth Circuit clarified in its opinion that its decision to remand the Section 304 reimbursements was based on LPHI's restatement issued in 2011 due to its non-compliance with financial reporting requirements for fiscal years 2009 and 2010. As the Fifth Circuit stated: "In 2011, LPHI restated its financial statements for fiscal years 2009 and 2010 because its prior quarterly and annual reports did not comply with generally accepted accounting principles (GAAP)." *Life Partners*, 854 F.3d at 786. Accordingly, the relevant reimbursement period is from 2009-2011. According to LPHI's restatement, its fiscal years ended on February 28, 2009 and February 28, 2010. Dkt. No. 246-G-31 at 3. LPHI filed its fiscal year 2009 10-K on May 29, 2009, and its fiscal 2010 report was filed on May 12, 2010. Accordingly, the correct reimbursement period is from May 29, 2009 to May 12, 2011. Dkt. No. 246-G-29 at 31; Dkt. No. 246-G-30 at 31.

The SEC disagrees with this time period and insists that the correct reimbursement time period should begin January 16, 2017, the date LPHI filed its first false financial reports. Dkt. No. 423 at 11. However, Section 304 reimbursements are tied to the filing of the restatement and the specific annual reports that had to be restated not to public filings that violated other security laws. The plain language of the statute provides that if a CEO or CFO "is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for any bonus or other incentive-based or equity-based compensation received by that person from the issuer *during the 12-month period following* the first public issuance or filing with the Commission (whichever first occurs) *of the financial document embodying such financial reporting requirement*. . . ." 15 U.S.C. § 7243(a) (emphasis added). Case law also demonstrates that Section 304 reimbursements are tied to the filing of the restatement and the specific

annual reports that had to be restated and not to public filings occurring before such restatement. *See Cohen*, 622 F.3d at 193 ("Section 304 by its terms requires CEOs and CFOs to reimburse their company for any bonus or similar compensation, or any profits realized from the sale of company stock, for the 12–month period following a false financial report. . ."); *SEC v. Baker*, 2012 WL 5499497, at *3 (W.D. Tex. Nov. 13, 2012) (Sparks, J.) (finding that "there is no dispute Baker and Gluk received § 304 Compensation within the time period covered by the Complaint, i.e., within a year of the various Forms 10–k and 10–q which were subsequently restated."); *Jasper*, 883 F. Supp. 2d 915, 932 ("Under the plain language of the statute, as Company CFO, Defendant is required to reimburse Maxim for any bonus or profit from sale of Maxim stocks during the 12–month period following the filing of each of the 10–K Reports that had to be restated."); *SEC v. Shanahan*, 624 F. Supp.2d 1072 (E.D. Miss. 2008) (rejecting the SEC's argument that it was entitled to damages under § 304 with regard to a company's financial statements filed in 2002 despite the fact that the company had never filed a financial restatement for that period finding that a financial restatement must actually be filed before penalties may be imposed under the statute).[4]

Based upon the foregoing, the correct time period to calculate reimbursements in this case is tied to the actual restatement filed by LPHI. As clearly stated by the Fifth Circuit and demonstrated by the record in this case, the 2011 restatement issued by LPHI concerned fiscal years 2009 and 2010. Accordingly, the correct reimbursement period is the "12-month period following" LPHI's filing of its

---

[4]Similar to the SEC's argument in this case, in *Shanahan*, 624 F. Supp.2d at 1078, the SEC argued that because the 2002 financial statement had contained material errors, a restatement was required under general accounting principles and thus Section 304 should apply even if the company had not filed such a restatement. *Id.* The district court rejected the SEC's theory and granted the defendant's motion for summary judgment holding that the issuer must actually file a financial restatement before penalties may be imposed under the statute. *Id.*

2009 financial statement (filed on May 29, 2009) and 2010 financial statement (filed on May 12, 2010). Therefore, the correct reimbursement period in this case is from May 29, 2009 to May 12, 2011.

The SEC's Motion asks the Court to order Pardo to reimburse LPHI $1,571,689 in bonuses he received from 2008-2011.[5] As noted, however, the correct time period is 2009-2011. The 2011 restatement issued by LPHI shows that Pardo received a total of $1,325,566 in bonuses in years 2009-2011. Dkt. No. 246-G-31 at p. 47. Pardo has failed to provide the Court with any evidence that disputes the fact that he received these bonuses. Accordingly, under § 304, Pardo is obligated to reimburse LPHI $1,325,566 for bonuses he received in years 2009-2011.

The SEC also asks the Court to order Pardo to reimburse LPHI $11,528,939.42 for the proceeds he received between February 12, 2007 through January 9, 2009 from the sales of LPHI stock. As noted, under Section 304, the CEO or CFO must reimburse the company for "any profits realized from the sale of securities of the issuer during that 12-month period." 15 U.S.C. § 7243(a)(2). Again, however, the SEC is seeking reimbursements for stock sales that did not occur during the relevant reimbursement period. The SEC has failed to point the Court to any evidence showing that Pardo or his family trust sold any stock during the relevant time period between May 29, 2009 to May 12, 2011. Dkt. No. 417 at 25 (pointing to evidence of stock sales only from February 12, 2007 to January 9, 2009). Accordingly, the SEC has failed to sustain its burden with regard to its claim that Pardo must reimburse LPHI $11,528,839.42 for "any profits realized from the sale of securities of the issuer during that 12-month period." 15 U.S.C. § 7243(a)(2).

---

[5]The SEC also sought $239,843 as reimbursement for Pardo's country club dues and expenses, hangar space, cell phone usage, a home computer and tuition and books. However, Pardo claimed in his response that these payments were reimbursements and not compensation under Section 304. Dkt. No. 420 at 24. In light of Pardo's acknowledgment, the SEC now seeks those costs in the computation of Pardo's disgorgement, rather than under Section 304. Dkt. No. 423 at 11 n.24.

Based upon the foregoing, the Court finds that the appropriate amount of reimbursements under Section 304 in this case is $1,325,566 for the bonuses Pardo received between 2009-2011. Accordingly, the Court will recommend that the District Court order Pardo to reimburse LPHI $1,325,566 under Section 304 of SOX.

## III. RECOMMENDATION

For the reasons set forth above, the Magistrate Court **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Plaintiff's Security and Exchange Commission's Motion to Enter Judgment on Remand (Dkt. No. 417) as follows. The Magistrate Court **RECOMMENDS** that the District Court: (1) **ENTER** a permanent injunction enjoining Brian D. Pardo and R. Scott Peden from violating Section 17(a) of the Securities Act of 1933; (2) **DENY** the SEC's request to order disgorgement against Brian D. Pardo and R. Scott Peden; (3) **ORDER** Brian D. Pardo and R. Scott Peden to pay civil penalties under Section 17(a) of the Securities Act of 1933 in the amount of $130,000; (4) **ORDER** Brian D. Pardo to pay civil penalties under Section 13(a) of the Securities Act of 1933 in the amount of $3,555,000; (5) **ORDER** R. Scott Peden to pay civil penalties under Section 13(a) of the Securities Act of 1933 in the amount of $2,000,000; and (6) **ORDER** Brian D. Pardo to reimburse Life Partners Holdings, Inc. $1,325,566 under Section 304 of the Sarbanes–Oxley Act of 2002.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of August, 2018.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE