IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:12-CV-33-RP |
| | § | |
| LIFE PARTNERS HOLDINGS, INC., BRIAN PARDO, and R. SCOTT PEDEN, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is the report and recommendation of United State Magistrate Judge Andrew W. Austin, (R. & R., Dkt. 427), concerning Plaintiff Securities and Exchange Commission's ("SEC") Motion to Enter Judgment on Remand and Brief in Support, (Mot., Dkt. 417). Also before the Court are Defendants Brian Pardo and R. Scott Peden's ("Defendants") objections to the report and recommendation, (Pardo Obj., Dkt. 431; Peden Obj., Dkt. 428), and the SEC's omnibus response to Defendants' objections, (Resp., Dkt. 432). Plaintiff's motion to enter judgment on remand was referred to Magistrate Judge Austin for a report and recommendation pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Court reviews the report and recommendation in part for clear error, and in part *de novo*, as discussed below.

**I. BACKGROUND**

Life Partners Holdings, Inc. ("LPHI") was a publically held company in the business of facilitating sales of life insurance policies to secondary market investors. LPHI derived its income from the fees earned on the sale of these policies, commonly referred to as life settlements. The SEC brought an enforcement action against LPHI, alleging that LPHI knew that its life expectancy

estimates for the insureds were materially short; that these life expectancy estimates were of critical importance in determining the policy's sale price; and that LPHI should have disclosed this knowledge in public filings as a known problem rather than as an unmaterialized contingent risk.

A jury trial commenced on January 29, 2014, presided over by the Honorable James R. Nowlin. The jury found that:

- Defendant Brian Pardo, Defendant R. Scott Peden, and LPHI violated Section 17(a) of the Securities Act of 1933 (the "Securities Act");

- LPHI, aided and abetted by Pardo and Peden, violated Section 13(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rules 12b-20, 13a-1, and 13a-13 thereunder; and

- Pardo violated Rule 13a-14 of the Exchange Act by knowingly certifying false public reports that LPHI had filed with the SEC during that period.

After trial, the Court:

- set aside the jury's Section 17(a) verdict;

- declined to order reimbursement under Section 304 of the Sarbanes-Oxley Act of 2002 (the "SOX Act");

- ordered disgorgement against Defendants Pardo and Peden;

- ordered Defendants Pardo and Peden to pay second-tier civil penalties of $6,161,843 and $2,000,000, respectively, for their violations of Section 13(a) of the Exchange Act; and

- enjoined all defendants from violating or aiding and abetting future violation of Section 13(a) of the Exchange Act.

*SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615 (W.D. Tex. 2014).

On cross-appeals, the Fifth Circuit Court of Appeals upheld the verdicts and judgments against Pardo and Peden; reinstated the jury's Section 17(a) verdict; vacated the Section 13(a) civil penalty orders; and reversed the Court's denial of the SEC's request for reimbursement under Section 304 of the SOX Act. The Fifth Circuit remanded for (1) determination of the appropriate remedy for Pardo and Peden's violations of Section 17(a); (2) reassessment of the civil penalty amounts owed under Section 13(a); and for (3) determination of the amount of reimbursement Pardo owed LPHI under Section 304 of the SOX Act. *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 789 (5th Cir. 2017). Now on remand, the SEC requests an order from this Court: (1) permanently enjoining Defendants from future violations of Section 17(a); (2) requiring disgorgement of Defendants' ill-gotten gains; (3) requiring Defendants to pay civil penalties commensurate with their violations; and (4) requiring Defendant Pardo to reimburse LPHI in the amount of $13,340,371 in accordance with Section 304 of the SOX Act. (Mot., Dkt. 417).

The report and recommendation includes a thorough discussion of the background of this case and the applicable law. Magistrate Judge Austin recommends that the Court grant in part and deny in part the SEC's motion. Specifically, the Magistrate Judge recommends that the Court:

(1) enter a permanent injunction enjoining Defendants from violating Section 17(a) of the Securities Act;

(2) deny the SEC's request to order disgorgement against Defendants;

(3) order Defendants to pay civil penalties under Section 17(a) of the Securities Act in the amount of $130,000;

(4) order Defendant Pardo to pay civil penalties under Section 13(a) of the Exchange Act in the amount of $3,555,000;

(5) order Defendant Peden to pay civil penalties under Section 13(a) of the Exchange Act in the amount of $2,000,000; and

(6) order Defendant Pardo to reimburse LPHI in the amount of $1,325,566 under Section 304 of the Sarbanes-Oxley Act of 2002.

(R. & R., Dkt. 427).

Defendant Pardo objects to the following portions of the report and recommendation:

- the calculated number of Pardo's violations (51) of Section 13(a), the category of those violations (second-tier), and the amount of civil penalties recommended ($3,555,000) for those violations;

- the amount recommended that Pardo reimburse LPHI ($1,325,566) pursuant to Section 304 of the SOX Act; and

- the recommendation that Pardo be assessed third-tier civil penalties for violations of Section 17(a).

(Pardo Obj., Dkt. 431).

Defendant Peden makes the following objections to the report and recommendation:

- the report attributes Pardo's bad acts to Peden;

- the report does not adequately consider the import of LPHI's bankruptcy proceeding on this case;

- the report lacks analysis for its determination of the calculated number of Peden's violations (34) of Section 13(a) and the amount of civil penalties recommended ($2,000,000) for those violations; and

- the Magistrate Judge did not adequately consider "positive equitable factors" in making his recommendations.

(Peden Obj., Dkt. 428).

## II. DISCUSSION

Defendants have collectively objected to most of the Magistrate Judge's report and recommendation. Defendants are entitled to *de novo* review of those parts of the report and recommendation to which they object. Having conducted a *de novo* review of the record and applicable law where appropriate,[1] the Court agrees with the Magistrate Judge's factual findings and legal conclusions with respect to all portions of the report and recommendation except the portion addressing the appropriate amount of civil penalties to be assessed for Defendants' violations of Section 17(a) of the Securities Act. The Court therefore adopts the report and recommendation in part and rejects it in part.

### A. Permanent Injunction as to Section 17(a) of the Securities Act

The Magistrate Judge recommends that a Section 17(a) permanent injunction be entered as to both Pardo and Peden. (R. & R., Dkt. 427, at 24). Defendant Pardo does not object to the entry of an injunction. (Pardo Obj., Dkt. 431, at 24). Defendant Peden objects that an injunction is not appropriate because "[t]hroughout the entirety of this case, the bad actions of Defendant Pardo have also been attributed to Defendant Peden in both the Magistrate's Report and in the District Court's original opinion." (Peden Obj., Dkt. 428, at 1). Peden further objects that he "had no practical or effective authority to control any statements made in any of LPHI's public filings," and so Section 17(a) penalties should not be imposed on him. (*Id.* at 2).

Upon *de novo* review, the Court confirms that entry of a Section 17(a) permanent injunction is appropriate as to both Defendants. The Magistrate Judge correctly applied the evidence in the record to the *Gann* factors in determining that a permanent injunction is necessary to protect the public from future violation of Section 17(a). (R. & R., Dkt. 427, at 8–10); *see SEC. v. Gann*, 565 F.3d

---

[1] No party objects to the Magistrate Judge's findings and recommendation concerning disgorgement of Defendants' salaries and bonuses. The Court therefore reviews this portion of the report and recommendation for clear error. All other portions of the report and recommendation are reviewed *de novo*.

932, 940 (5th Cir. 2009) (factors a court must consider when determining the propriety of a permanent injunction include: (1) egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree of scienter; (4) sincerity of the defendant's recognition of his transgression; and (5) likelihood of the defendant's job providing opportunities for future violations). The Court agrees that the evidence strongly supports entry of a permanent injunction.

Defendant Peden's objection to entry of a permanent injunction is without merit. Peden argues that the Magistrate Judge and the district court have erroneously attributed Defendant Pardo's "bad acts" to Peden. This issue is settled. The jury was presented "with a great deal of evidence" that Defendants—both Pardo and Peden—knew that LPHI was shorting its life expectancy estimates, (Order, Dkt. 279, at 11), and the jury concluded that Peden knew of LPHI's false statements and provided substantial assistance in making them. (*See* Jury Charge, Dkt. 247, at 31; Verdict, Dkt. 258, at 3). Peden may not now relitigate the jury's determination that he, individually, violated Section 17(a).[2]

Accordingly, the Court adopts the Magistrate Judge's recommendation that Defendants Pardo and Peden be permanently enjoined from violating Section 17(a) of the Securities Act.

**B. Disgorgement**

The SEC moves for disgorgement of Pardo's and Peden's entire salaries and bonuses from 2007 to 2011. (Mot., Dkt. 417, at 16). The Magistrate Judge found that the SEC presented insufficient proof that Pardo's and Peden's entire salaries and bonuses from this period flowed from illegal activities. Accordingly, the Magistrate Judge declined to recommend disgorgement against Pardo and Peden. The parties do not object to this recommendation.

[2] Peden's reliance on *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011), is misplaced. *Janus* addresses false statements made under Section 10(b) and Rule 10b-5(b), and the vast majority of courts have held that *Janus* does not apply to Section 17(a) claims. *See, e.g.*, *Koch v. SEC*, 793 F.3d 147, 156–57 (D.C. Cir. 2015); *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 795–98 (11th Cir. 2015); *SEC v. Farmer*, 2015 WL 5838867, at *7 (S.D. Tex. Oct. 7, 2015); *SEC v. Benger*, 931 F. Supp. 2d 904, 906–07 (N.D. Ill. 2013); *SEC v. Stoker*, 865 F. Supp. 2d 457, 465 (S.D.N.Y. 2012).

The Court finds that the Magistrate Judge's conclusion is neither clearly erroneous nor contrary to law. The Court therefore adopts the Magistrate Judge's recommendation that disgorgement against Pardo and Peden be denied.

**C. Civil Penalties under Section 17(a) of the Securities Act**

The Magistrate Judge recommends imposing third-tier penalties in the amount of $130,000 against Defendants Pardo and Peden in this case. (R. & R., Dkt. 427, at 24). Third-tier civil penalties for violations of Section 17(a) are appropriate for violations that involve fraud and "result[ ] in substantial losses or create[ ] a significant risk of substantial losses to other persons." *SEC v. Helms*, 2015 WL 5010298, at *21 (W.D. Tex. Aug. 21, 2015). Both Pardo and Peden object that third-tier penalties are inappropriate because there has been no finding of "fraud" against them. (Pardo Obj., Dkt. 431, at 24–26; Peden Obj., Dkt. 428, at 2). Defendants are correct.

Section 17(a) of the 1933 Act makes it:

> unlawful for any person in the offer or sale of any securities[,] . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> > (1) to employ any device, scheme, or artifice to defraud, or
> > (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
> > (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). Liability under Section 17(a)(1) "attaches only upon a showing of severe recklessness." *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 786 (5th Cir. 2017) (quoting *Meadows v. SEC*, 119 F.3d 1216, 1226 (5th Cir. 1997)). Sections 17(a)(2) and 17(a)(3), however, only require a showing of negligence. *Meadows*, 119 F.3d at 1226 n.15.

As conceded before the Fifth Circuit, the jury returned a verdict form finding Defendants Pardo and Peden liable under Section 17(a) generally. *Life Partners*, 854 F.3d at 786 n.13. The district

court set aside the jury's verdict, finding that there was not "a single piece of evidence that support[ed] the jury's conclusion that Defendants violated Section 17 *in January and February 2007* by misleading investors about LPHI's revenue recognition practices." (Order, Dkt. 279, at 8) (original emphasis). In reinstating the jury's verdict, the Fifth Circuit reasoned that "the jury could have found that [Defendants] could have committed violations of section 17(a)(2) or 17(a)(3)" because, unlike section 17(a)(1), neither of these sections require proof of scienter. *Life Partners*, 854 F.3d at 786. The Fifth Circuit "conclude[d] that the jury's verdict was supported by substantial evidence"—that is, "more than a scintilla of evidence that the appellants negligently misrepresented the risk of underestimated LEs in its January 2007 quarterly report, which incorporated LPHI's prior annual report." *Id.*

The Magistrate Judge noted that Sections 17(a)(2) and 17(a)(3) "clearly contemplate and include fraud," and that when Judge Nowlin set aside the jury's Section 17(a) verdict, he did not do so "on account of a lack of evidence that Defendants had committed securities fraud." (R. & R., Dkt. 427, at 7). Nevertheless, while Sections 17(a)(2) and 17(a)(3) may contemplate and include fraud, they do not require it. *Life Partners,* 854 F.3d at 786; *Steadman v. SEC*, 603 F.2d 1126, 1132–33 (5th Cir. 1979) (scienter not required under Section 17(a)(2), and the word "fraud" in Section 17(a)(3) focuses on conduct, not culpability). In other words, while a showing of fraud is sufficient to establish the requisite culpability for violations of Sections 17(a)(2) and 17(a)(3), it is not necessary. Similarly, although Judge Nowlin did not *preclude* a finding of fraud by the jury, neither did he indicate that the jury *necessarily* found fraud.[3] Defendants are correct that there has not been a finding of fraud against them in this case.

[3] Plaintiff argues that Judge Nowlin made specific findings about the Defendants' state of mind, but Plaintiff incorrectly applies these findings, which concern Defendants' mental state with respect to their violations of Section 13(a), to Defendants' separate and distinct Section 17(a) violations. (Resp., Dkt. 432, at 5).

Because the jury did not determine that the Defendants acted fraudulently, it is inappropriate to impose third-tier civil penalties on Defendants for their violations of Section 17(a). Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize courts to assess civil penalties for violations of the securities laws, but they limit this authority by establishing three "tiers" that cap the penalties that may be assessed. 15 U.S.C. §§ 77t(d), 78u(d). Each tier requires a different showing. All violations are subject to the first tier. *Id.* Second-tier penalties are appropriate for each violation of the securities laws that involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* Third-tier penalties are appropriate for violations that involve fraud and "result[ ] in substantial losses or create[ ] a significant risk of substantial losses to other persons." *Id.* Because Defendants' Section 17(a) violations occurred in 2007, the maximum penalty they may be assessed per violation is $6,500 for first-tier violations, $65,000 for second-tier violations, and $130,000 for third-tier violations. 17 C.F.R. § 201.1005. The maximum penalty the Court may award is the greater of the gross amount of pecuniary gain, or the amount set by the applicable tier. 15 U.S.C. §§ 77t(d), 78u(d).

The Magistrate Judge recommended that Defendants' violations of Section 17(a) warranted third-tier penalties and that a $130,000 penalty was appropriate "[b]ecause the Court has already awarded significant penalties in this case." (R. & R., Dkt. 427, at 14). As explained above, there has been no finding of fraud against Defendants in this case; therefore, third-tier penalties are inappropriate.

Second-tier penalties are also inappropriate. The requisite showing for second-tier penalties is that Defendants acted with "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" in committing the Section 17(a) violations. 15 U.S.C. §§ 77t(d), 78u(d). But, because the jury found Defendants liable as to Section 17(a) *generally*, they may have found that Defendants merely acted negligently. *Meadows*, 119 F.3d at 1226 n.15 (culpability under Sections

17(a)(2) and 17(a)(3) is established merely by a showing of negligence) (citing *Aaron v. Securities & Exchange Comm'n*, 446 U.S. 680, 697 (1980)). Accordingly, there has not been a finding that Defendants acted with the requisite culpability warranting second-tier penalties for their Section 17(a) violations.

The Court therefore rejects the Magistrate Judge's report and recommendation with respect to the appropriate tier of civil penalties for Defendants' Section 17(a) violations. The Court will assess a first-tier penalty against Defendants for their violations of Section 17(a) in the amount of $6,500.[4]

**D. Civil Penalties under Section 13(a) of the Exchange Act**

The Magistrate Judge recommends that Defendant Pardo pay civil penalties under Section 13(a) in the amount of $3,555,000 for 51 violations of this section, and that Defendant Peden pay civil penalties under Section 13(a) in the amount of $2,000,000 for 34 violations of this section. (R. & R., Dkt. 427, at 24). Pardo objects to the number of violations the Magistrate Judge calculated, the category of those violations (second-tier), and the amount of civil penalties recommended. (Pardo Obj., Dkt. 431, at 5). Peden objects that the Magistrate Judge did not refer to the record in determining that Peden committed 34 violations of Section 13(a). (Peden Obj., Dkt. 428, at 6). Upon review of the record and the Magistrate Judge's reasoning, the Court agrees that the civil penalties calculated by the Magistrate Judge are appropriate.

Defendants' objections are without merit. First, Peden's objection is simply false. The Magistrate Judge clearly indicated that he based his calculation of Peden's penalties on evidence in

[4] Defendant Peden argues that **no** monetary penalties should be imposed on him, for either his Section 17(a) violation or Section 13(a) violations, because monetary penalties were not imposed on him in a different (bankruptcy) case and in connection with LPHI's bankruptcy proceedings. (Peden Obj., Dkt. 428, at 2–5). The outcome of this other bankruptcy case is irrelevant, as is LPHI's Chapter 11 plan. It is settled that Peden has violated federal securities laws in this case, and LPHI's bankruptcy plans cannot nullify the jury's verdict.

the record. (*See* R. & R., Dkt. 427, at 16) (citing the record). The Court agrees that $2,000,000 is an appropriate penalty for Peden's violations of Section 13(a).

Second, Pardo's objections have already been addressed and rejected by the Fifth Circuit in this case. Pardo theorizes that all violations resulting from the same "course of conduct" must and should be bundled together as "a single violation for purposes of calculating civil money penalties." (Pardo Obj., Dkt. 431, at 16). They *must* be bundled together, Pardo argues, because "the jury must determine the number of violations under the protection of the Seventh Amendment." (*Id.* at 9). But the Fifth Circuit has squarely rejected this argument, holding that Pardo and Peden "had no Seventh Amendment right to a jury trial at the remedies stage of this securities action, and the court acted within its power to make factual findings not in conflict with the jury's verdict." *Life Partners*, 854 F.3d at 782 (citing *Tull v. United States*, 481 U.S. 412, 425 (1987); *SEC v. Capital Sols. Monthly Income Fund, LP*, 818 F.3d 346, 354-55 (8th Cir. 2016); *SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002)). Accordingly, the Fifth Circuit held that "the jury's verdict, which established at least one violation of section 13(a) by the defendants, did not preclude a finding of multiple violations by the district court." *Id.*

Nevertheless, Pardo argues that all of his Section 13(a) violations *should* be bundled together because assessing a penalty for each of his violations results in an "excessive fine," (Pardo Obj., Dkt. 431, at 15), that does not comport with "common sense," (*id.* at 20).[5] But again, the Fifth Circuit has already addressed Pardo's argument, holding that "[a]t the remedies stage, trial judges may make factual findings and rely on such findings in assessing the amount of civil penalties so long as the court's findings do not conflict with the jury's findings as to liability." *Life Partners*, 854 F.3d at 781–

[5] Pardo cites several administrative court decisions imposing penalties for less than the total number of violations found. (*See* Pardo Obj., Dkt. 431, at 16–20). Pardo lifts these examples nearly verbatim from an article, which in addition to providing the examples, notes that "these decisions may not survive appellate scrutiny under the standards set forth in *Rapoport v. SEC*, 682 F.3d 98 (D.C. Cir. 2012), but very few respondents appeal their sanctions all the way to the D.C. Circuit." Eisenberg, *Calculating SEC Civil Money Penalties*, HARV. L. SCH. F. CORP. GOVERNANCE & FIN. REG. 2016, https://corpgov.law.harvard.edu/2016/01/24/calculating-sec-civil-money-penalties.

782 (citing *Lipson*, 782 F.3d at 662 ("[I]t was for the judge to decide, consistent with the jury's finding of liability, . . . the amount of a civil penalty.")); *see also SEC v. Monterosso*, 2012 U.S. Dist. LEXIS 198440, at *23 (S.D. Fla. Feb. 16, 2012) (civil penalty amount "is left to the sound discretion of the court") (citing *SEC v. Warren*, 534 F.3d 1368, 1369 (11th Cir. 2008)); *SEC v. Benger*, 2016 U.S. Dist. LEXIS 17632, at *8-9 (N.D. Ill. Feb. 10, 2016) (civil penalties assessments within the range of appropriate discretion are all "correct in the eyes of the law").

Finally, second-tier civil penalties for the Defendants' violations of Section 13(a) are consistent with the jury's findings. Second-tier penalties are appropriate for each violation of the securities laws that involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. §§ 77t(d), 78u(d). In contrast with the jury's finding with respect to Section 17(a), discussed in Section C, *supra*, the jury *did* necessarily find that Defendants acted with the requisite culpability to warrant second-tier penalties with respect to Section 13(a). As explained by the Fifth Circuit, "[r]ather than conflict with the jury's verdict, however, the district court's finding of recklessness was required by it. . . . If the appellants had knowledge of LPHI's violations and of their role in furthering it, as the jury found, they also *necessarily* exhibited 'deliberate or reckless disregard of a regulatory requirement.'" *Life Partners*, 854 F.3d at 782 (emphasis added) (citing 15 U.S.C. § 78u(d)(3)(B)(ii)).

Accordingly, the Court, in its discretion, finds that Section 13(a) civil penalties in the amount of $3,555,000 are appropriate in light of the substantial evidence of Pardo's "deliberate or reckless disregard" of Section 13(a)'s requirements. *Life Partners*, 854 F.3d at 782 (internal citation omitted).

**E. Reimbursement under Section 304 of the Sarbanes-Oxley Act**

The Magistrate Judge recommends that Defendant Pardo reimburse LPHI in the amount of $1,325,566 under Section 304 of the SOX Act. (R. & R., Dkt. 427, at 24). Pardo objects that this reimbursement is too large considering "the small magnitude of the restatement when compared to

LPHI's earning and assets for those years" falling within the reimbursement period. (Pardo Obj., Dkt. 431, at 22). Pardo cites no authority in support of this "proportionality reduction." (*Id.* at 23).

The Court confirms that the Magistrate Judge correctly determined the amount of reimbursement Pardo owes LPHI under Section 304 of the SOX Act. Pardo's objection that the statutorily required reimbursement should be reduced based on a proportionality principle with no basis in law is unpersuasive. The Court therefore adopts the Magistrate Judge's recommendation that Pardo reimburse LPHI $1,325,566 under Section 304 of the SOX Act.

**F. Leniency**

Both Defendants have objected on equitable grounds to the amount of civil penalties the Magistrate Judge recommends be assessed against them. Defendant Peden argues that he has been singled out by the SEC and has not been found liable for violating "more serious" securities laws. (Peden Obj., Dkt. 428, at 7–8). The Court finds these objections irrelevant to the question of Peden's liability. That other potential wrongdoers have not been sued, and that there are other laws Peden has not violated, have no bearing on the propriety of the penalties the Court assesses on Peden in this order.

More appositely, both Defendants argue that their current and future financial conditions warrant leniency from the Court. (Pardo Obj., Dkt. 431, at 26–28; Peden Obj., Dkt. 428, at 6–7). However, in light of Defendants' "long list of misleading reports," the decades of time over which the Defendants "did not seem to recognize the severity of their transgressions," the "litany of record evidence supporting the 'reasonable likelihood' of future transgressions," the "egregiousness of Defendants' conduct," and the substantial evidence indicating that the Defendants "knowingly or at least recklessly violated securities laws," (R. & R., Dkt. 427, at 8–10), the Court concludes that the penalties assessed in this order are appropriate.

## III. CONCLUSION

For the reasons stated above, **IT IS ORDERD** that the report and recommendation of United States Magistrate Judge Andrew W. Austin, (Dkt. 427), is **ADOPTED IN PART** and **REJECTED IN PART**. Accordingly, Plaintiff's Motion to Enter Judgment on Remand, (Dkt. 417), is **GRANTED IN PART** and **DENIED in PART**. The Court **FURTHER ORDERS**:

- Defendant Pardo and Defendant Peden are **PERMANENTLY ENJOINED** from committing future violations of Section 17(a) of the Securities Act of 1933;
- Defendant Pardo and Defendant Peden are **ORDERED** to pay civil penalties for violations of Section 17(a) of the Securities Act of 1933 in the amount of $6,500;
- Defendant Pardo is **ORDERED** to pay civil penalties for violations of Section 13(a) of the Securities and Exchange Act of 1934 in the amount of $3,555,000;
- Defendant Peden is **ORDERED** to pay civil penalties for violations of Section 13(a) of the Securities and Exchange Act of 1934 in the amount of $2,000,000; and
- Defendant Pardo is **ORDERED** to reimburse Life Partner Holdings, Inc. in the amount of $1,325,566 pursuant to Section 304 of the Sarbanes-Oxley Act of 2002.

**SIGNED** on September 28, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE